J-S23035-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AUGUSTUS SIMMONS, | : | |
| | : | |
| Appellant | : | No. 1857 EDA 2014 |

Appeal from the PCRA Order Entered June 18, 2014
in the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000302-2011,
CP-46-CR-0003703-2007, CP-46-CR-0003720-2007,
CP-46-CR-0003722-2007, CP-46-CR-0005175-2011,
CP-46-CR-0008947-2011

BEFORE:  DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED JUNE 11, 2015**

Augustus Simmons (Appellant) appeals *pro se* from the order

dismissing his petition filed pursuant to the Post Conviction Relief Act

(PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.[1]

On March 8, 2012, Appellant entered into a negotiated guilty plea at

the above-captioned case numbers.  The trial court imposed the agreed-

upon sentence of 25 to 50 years' imprisonment.  Appellant filed neither a

---

[1] Also before this Court is Appellant's *pro se* 103-page "Motion to Include
Exhibits for 1925(b) Brief" filed April 27, 2015.  This filing appears to be
Appellant's reproduced record. However, because this compilation of
documents includes items not included in the certified record, we deny
Appellant's motion. **Stumpf v. Nye**, 950 A.2d 1032, 1041 (Pa. Super. 2008)
("It is well-settled that this Court may only consider items which have been
included in the certified record and those items which do not appear of
record do not exist for appellate purposes.").

---

* Retired Senior Judge assigned to the Superior Court.

post sentence motion nor a direct appeal. Instead, on January 2, 2013, Appellant, acting *pro se*, filed a timely PCRA petition raising claims of plea counsel's ineffectiveness. Counsel was appointed. On April 22, 2013, PCRA Counsel filed a no-merit letter and request to withdraw as counsel. After reviewing counsel's no-merit letter, the PCRA court issued a notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss Appellant's petition without a hearing. Appellant timely filed a response. On June 18, 2014, the PCRA court granted PCRA counsel's petition to withdraw, and dismissed Appellant's PCRA. This appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.[2]

At the outset, we note that Appellant's fails to comply with the rules of appellate procedure in a number of ways. Most importantly, the brief lacks a statement of questions involved in violation of Rule of Appellate Procedure

---

[2] As the PCRA court explained

> By Order dated July 3, 2014, [the PCRA court] directed [Appellant] to file and serve upon the [PCRA court] a Concise Statement of [Errors] Complained of on Appeal ("1925(b) Statement") in conformity with Pa.R.A.P. 1925(b). Upon [Appellant's] failure to timely file the requisite 1925(b) Statement, [the PCRA court] issued an Opinion requesting that the appellate court quash [Appellant's] instant appeal. In response, [Appellant] filed an Application For Relief which the Superior Court granted based on [Appellant's] claims that prison officials failed to both give him the [c]ourt's 1925(b) request and, in tum, to mail [Appellant's] 1925(b) Statement to [the PCRA court]. [Upon receiving Appellant's 1925(b) statement, the PCRA court filed a 1925(a) opinion.]

PCRA Court Opinion, 11/10/2015, at 6.

2116, which provides, "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. … No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). For this reason alone, Appellant's appeal warrants no relief.

Nevertheless, a review of the brief reveals that Appellant is raising on appeal to this Court the same issues he raised before the PCRA court:

> 1. Both Ms. Keagy and Mr. Bauer were ineffective for allegedly failing to file pretrial motions and coercing [Appellant] to accept the negotiated guilty plea, respectively; and
>
> 2. PCRA Counsel had a conflict of interest and was ineffective for concluding that [Appellant] had no meritorious issues on appeal.

PCRA Court Opinion, 11/10/2015, at 9.

Following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Thomas A. Branca states findings of fact that are supported by the record, evidences no abuse of discretion, and thoroughly and correctly addresses and disposes of Appellant's issues and supporting arguments. Accordingly, we adopt the PCRA court's opinion, filed on November 10, 2014, as our own, and affirm the dismissal of Appellant's PCRA petition on the basis of that opinion. The parties shall attach the copy of the PCRA court's November 10, 2014 opinion, attached to this memorandum, in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2015

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA:    NO. 3703-07, 3720-07, 3722-07
                             :           302-11, 5175-11, 8947-11
         v.                 :             1857 EDA 2914
                             :

AUGUSTUS SIMMONS         :

### OPINION OF THE COURT

Branca, J.                                        November 10, 2014

### I. INTRODUCTION

August Simmons ("Defendant") appeals to the Superior Court from this Court's Order dated June 18, 2014, dismissing Defendant's *Pro Se* Post-Conviction Relief Act ("PCRA") Petition. For the reasons that follow, Defendant's appeal is without merit.

### II. STATEMENT OF THE CASE

#### A. Factual History

On March 8, 2012, Defendant entered a negotiated guilty plea to number of charges, including conspiracy to commit murder and arson, in addition to several probation violations, resulting in an aggregate sentence of twenty (25) to fifty (50) years of incarceration. [N.T. 3/8/12, at 7- 8].

By way of background, in 2007 Defendant experienced several brushes with the law, which precipitated charges, denoted in three separate Bills of Information,[1] including Burglary, Theft, and related crimes. As a result of those charges Defendant entered an open guilty plea on January 31, 2008, was ultimately sentenced on April 24, 2008 to time-served, and released to the custody of the Pennsylvania Board of Probation and Parole. Thereafter, in 2011, Defendant was once again apprehended by police, this time for several first degree felonies

---

[1] [3703-07, 3720-07, 3722-07].

including Robbery, Aggravated Assault, and Conspiracy.[2] Initially, the Public Defender's Office of Montgomery County represented Defendant in connection with these charges, but on February 15, 2011, the Public Defender filed a Motion to Withdraw and Appoint Private Counsel. The Motion to Appoint Private Counsel was based on the Public Defender's belief that its representation of both Defendant and one of his co-Defendants (303-11) at the time presented a conflict of interest. By Order dated February 16, 2011, the Court granted the Public Defender's Motion and appointed Bonnie-Ann Brill Keagy, Esquire, ("Ms. Keagy") as private conflict counsel to represent Defendant.

Thereafter, on June 30, 2011, Defendant was arrested on new charges stemming from a Grand Jury Presentment. Ultimately, that Presentment culminated in the Commonwealth's filing of Bill of Information 5175-11, delineating some one hundred forty (140) counts, including more than a dozen counts of Criminal Attempted Homicide and Arson.[3] In short, these charges emanated from Defendant hiring several eventual co-Defendants[4] to fire bomb the home of a material witness who was to testify against Defendant in the case involving the robbery and assault in Conshohocken, Pennsylvania on July 28, 2010, as set forth in Bill of Information 302-11. The Grand Jury Presentment which is thirty-eight (38) pages long, and therefore, not appended hereto sets forth a detailed account of Defendant's criminal culpability which was admitted to by Defendant by virtue of his plea. [5175-11: Affidavit of Probable Cause and Grand Jury Presentment, 7/22/11].

Based on an apparent conflict of interest which arose from Defendant's new charges and Ms. Keagy's employment as a County Solicitor with the Montgomery County Office of Children and Youth, Ms. Keagy filed a Motion to Appoint Private Counsel on September 7,

[2] [302-11].
[3] [5175-11].
[4] These co-Defendants pled guilty and one or more were prepared to testify against Defendant.

2

2011. By Order of the same date, the Court appointed Paul A. Bauer, III, Esquire ("Mr. Bauer") to represent Defendant.

After repeated negotiations with the Commonwealth, Mr. Bauer negotiated a plea agreement addressing both of Defendant's underlying Gagnon violations (3703-07, 3720-07), in addition to his three new files (302-11, 5175-11, 8947-11), whereby Defendant would serve an aggregate sentence of twenty (25) to fifty (50) years of incarceration. More specifically, Defendant pled guilty to the following charges in exchange for the following sentences:

### Bill of Information 302-11:

**Count One:** Robbery— imprisonment not less than seven (7) nor more than fourteen (14) years, to run from January 1, 2011, concurrent to Bill of Information 5175-2011;

### Bill of Information 5175-11:

**Count One:** Criminal Conspiracy at Murder— imprisonment not less than ten (10) nor more than twenty (20) years;

**Count Two:** Criminal Conspiracy at Murder— imprisonment not less than ten (10) nor more than twenty (20) years, to run consecutive to Count One;

**Count Three:** Conspiracy if Witness Intimidation— imprisonment not less than five (5) nor more than ten (10) years, to run consecutive to Count Two;

**Count Fifty Five:** Conspiracy to Commit Arson— imprisonment not less than ten (10) nor more than twenty (20) years, to run from March 8, 2012;

**Count Fifty Six:** Conspiracy to Commit Arson— imprisonment not less than ten (10) nor more than twenty (20) years, to run from March 8, 2012;

**Count Fifty Seven:** Conspiracy to Commit Arson— imprisonment not less than ten (10) nor more than twenty (20) years, to run from March 8, 2012;

**Count One Hundred Nine:** Risking A Catastrophe— imprisonment not less than one (1) nor more than two (2) years, to run from March 8, 2012; and

**Count One Hundred Seventeen:** Corrupt Organizations— imprisonment not less than five (5) nor more than ten (10) years, to run from March 8, 2012;

3

## Bill of Information 8947-11:

**Count One:** Terroristic Threats— imprisonment not less than one (1) nor more than two (2) years, to run from March 8, 2012;

## Gagnon Violations on Bill of Information 3703-07:

**Count One:** Burglary—Probation Revoked, imprisonment not less than five (5) nor more than Ten (10) years, to run from March 8, 2012;

## Gagnon Violations on Bill of Information 3720-07:

**Count Six:** Burglary—Probation Revoked, imprisonment not less than five (5) nor more than Ten (10) years, to run from March 8, 2012;

## Gagnon Violations on Bill of Information 3722-07:

**Count One:** Burglary—Probation Revoked, imprisonment not less than five (5) nor more than Ten (10) years, to run from March 8, 2012;

[N.T. 3/8/12, at, 2-37].

At the plea hearing, Mr. Bauer specifically examined Defendant with regard to the voluntary, knowing and intelligent nature of his decision to plead guilty, as follows:

> Q.    Now, I'd like to take a little time with you, if I can, because I know there's three different cases, plus there are your Gagnon files. I want to make sure I go over everything with you, so you understand truly what it is that you're doing today. Do you understand?
>
> A.    Yes.

[N.T. 3/8/12, at 8-9]. It was at this point in the hearing that Mr. Bauer led Defendant meticulously through each of the underlying files, which the Commonwealth's attorney had outlined in detail on the record moments before, and to which Defendant had agreed to plead guilty. [N.T. 3/8/12, 2-7, 8-39.] At the conclusion of Defendant's qualifying evidence, Mr. Bauer moved for the admission of Defendant's previously executed written Guilty Plea Colloquy. [N.T. 3/8/12, at 39]. In addition to his oral colloquy, in his written Guilty Plea Colloquy, Defendant verified by sworn written statement that he committed all of the elements

4

of the underlying crimes, understood the terms of his negotiated guilty plea and appellate rights and that his decision to accept the plea agreement was knowing, voluntary, and intelligent. [G.P. Colloquy, at 1-10]; [N.T. 3/8/12. At 31-34].[5]

And while Defendant now claims that he was coerced by Mr. Bauer to plead guilty, the record as a whole, and specifically the excerpt below belie that assertion:

Q.   And nobody can force you to enter a guilty plea with respect to that Grand Jury indictment, and in particular those [5175-2011] eight different charges.

A.   Yes.

Q.   It's got to be a voluntary act on your part. Do you understand that?

A.   Yes.

Q.   Has anybody forced you to do this?

A.   No.

Q.   Has anybody threatened you to do this?

A.   No.

Q.   Has anybody coerced you into doing this?

A.   No.

Q.   Have there been any promises made, by either the District Attorney's Office or myself, to get you to enter this guilty plea, other than the plea agreement as read by the Assistant District Attorney in this case?

A.   No.

[N.T. 3/8/12, at 20-21]. Moreover, contrary to his allegations now, Defendant confirmed at the hearing that he was satisfied with Mr. Bauer's representation, as follows:

Q.   And are you satisfied with my service in this case?

A.   Yes.

---

[5] *See Commonwealth v. Librizzi*, 810 A.2d 692 (Pa. Super. Ct. 2002).

5

[N.T. 3/8/12, at 34]. In addition, despite his instant claim that Mr. Bauer and Ms. Keagy were ineffective for failing to file certain pretrial motions, Defendant himself explicitly agreed at the hearing that he understood the specific ramifications of his plea, including its effectual waiver of all issues involving pretrial motions, or the lack thereof, as follows:

> Q.   ... you and I have talked about various pretrial motions that we would have filed if we were to proceed to a trial in this case ...  An one of those pretrial motions that we could file was the fact that we would ask for a change of venue, or a new jury to come in from another county ... . And you and I have gone over other forms of pretrial motions, like a suppression motion, things of that nature, a line-up if that's necessary. There are various pretrial motions that you and I have went through that, by virtue of this guilty plea, we're giving up litigating those pretrial motions and asking the Court to accept these guilty pleas; is that correct?
>
> A.   Yes.

[N.T. 3/8/12, at 35].

In addition to repeating and recounting each of the underlying crimes to which Defendant was pleading guilty, the Court incorporated Defendant's Grand Jury Presentment[6] on Bill of Information 5175-11, and the Affidavits of Probable Cause on Defendant's other two new files,[7] respectively. [N.T. 3/8/12, at 40-41]. At the conclusion of the hearing, the Court directly addressed Defendant and posed the following questions:

> Q.   Mr. Simmons, you've been asked a number of times, and I'm just going to ask one more time.
> Do you have any questions at all about what you're doing here today, sir, about the ramifications of what you're doing here today? And do you completely understand all of the rights that you're giving up by entering into this guilty plea, before I accept it?
>
> A.   Yes, I do.
>
> Q.   And do you have any questions at all?

---

[6] [ MD 183-2010, Investigation No. 36, as charged via Bill of Information 5175-11].
[7] [302-11; 8947-11].

6

A.    No.

[N.T. 3/8/12, at 41]. With that final exchange, the undersigned sentenced Defendant to an aggregate of twenty (25) to fifty (50) years of incarceration in accordance with his negotiated guilty plea. [N.T. 3/8/12, 41-49]. At the time of his sentencing, Defendant faced the potential imposition of approximately eighty-six (86) to one hundred seventy-two (172) years of incarceration if sentenced consecutively on the charges to which he pled guilty.[8]

## B.    Procedural History

Defendant, who filed neither a post-sentence motion, nor a direct appeal, did timely file a *Pro Se* PCRA Petition on January 2, 2013 wherein he sought to withdraw his guilty plea.[9] Thereafter, this Court appointed Timothy Peter Wile, Esquire of the Montgomery County Public Defender's Office ("PCRA Counsel") to represent Defendant on his PCRA. On April 22, 2013, PCRA Counsel filed a Petition for Leave of Court to Withdraw ("Petition"), attaching thereto a copy of the "no merit" letter that had been mailed to Defendant at his place of confinement. On May 13, 2013, while still represented by PCRA Counsel, Defendant filed *pro se* a document entitled "objection to rule 907 notice of intention to dismiss."[10] While claiming to be a response to a Pa. R.Crim. P. 907 notice of intent to dismiss, no such notice had yet been issued by the Court and thus, Defendant's *pro se* filing was premature. Nonetheless, in an abundance of caution, the Court reviewed Defendant's objection wherein he baldly asserted not only that PCRA Counsel was ineffective, but also the following claim that: "there will be a potential for present and future conflict of interest" because, as an employee of the

---

[8] Defendant's exposure to convictions on Bill of Information 5175-11 alone which delineated some 140 counts was in excess of one hundred years. [5175-11].

[9] Defendant's *Pro Se* PCRA includes two different time-stamp notations from Clerk of Courts—January 4, 2013 and January 2, 2013.

[10] "[A] criminal defendant currently represented by counsel is not entitled to 'hybrid representation'— *i.e.,* he cannot litigate certain issues *pro se* while counsel forwards other claims." *Commonwealth v. Tedford,* 960 A.2d 1, 10 n. 4 (Pa. 2008) (internal citations omitted).

7

Public Defender's Office, PCRA Counsel is employed by the same office that "had represented and/or still represents petitioner's co-Defendants." After a review of the record, the Court readily concluded that Defendant's instant assertion was meritless, especially in light of this Court's determination that Defendant's plea was knowing, voluntary, and intelligent. Thereafter, upon its own independent review of the record and PCRA Counsel's Petition, the Court did in fact issue an Order, dated January 8, 2014, notifying Defendant of its intent to dismiss his PCRA without an evidentiary hearing pursuant to Pa. R. Crim. P. 907. In response, Defendant filed *pro se* correspondence on January 27, 2014, which was nearly identical to his previously filed objection, and thus, again failed to set forth any meritorious claim. By Order dated June 18, 2014, the Court granted PCRA Counsel's Petition for Leave of Court to Withdraw, and dismissed Defendant's PCRA.

Defendant filed a timely Notice Appeal on June 30, 2014. By Order dated July 3, 2014, this Court directed Defendant to file and serve upon the undersigned a Concise Statement of Matters Complained of on Appeal ("1925(b) Statement") in conformity with Pa. R.A.P. 1925(b). Upon Defendant's failure to timely file the requisite 1925(b) Statement, this Court issued an Opinion requesting that the appellate court quash Defendant's instant appeal. In response, Defendant filed an Application For Relief which the Superior Court granted based on Defendant's claims that prison officials failed to both give him the Court's 1925(b) request and, in turn, to mail Defendant's 1925(b) Statement to this Court. The instant Supplemental Opinion is prepared in response to the Superior Court's September 10, 2014 Order, which directed this Court accept Defendant's "Brief in Support of Statement of Matters Complained of on appeal pursuant to Pennsylvania rule of appellant procedures 1925(b) and 1925(c)(4) 42 Pa. C.S.A." and address the same as Defendant's 1925(b) Statement.

8

III.   ISSUES PRESENTED

On appeal, the Court distills Defendant's issues as follows:

1. Both Ms. Keagy and Mr. Bauer were ineffective for allegedly failing to file pretrial motions and coercing Defendant to accept the negotiated guilty plea, respectively; and

2. PCRA Counsel had a conflict of interest and was ineffective for concluding that Defendant had no meritorious issues on appeal.

IV.   DISCUSSION

On appeal, the standard of review regarding a trial court's order dismissing a PCRA petition is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. *Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. Ct. 2010)(internal citation omitted). Additionally, the reviewing court "grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002).

To set forth a viable ineffective assistance of counsel claim under the PCRA, a defendant must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. § 9543(a)(2)(ii). "[C]ounsel is presumed effective, and [appellant] bears the burden of proving otherwise." *Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014). To overcome the presumption of counsel's effectiveness, a defendant must establish that: (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) defendant suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. *Id.* (internal citations omitted); *See*

9

*Strickland v. Washington*, 466 U.S. 668 (1984). Failure to prove any one prong of the above enumerated criteria will waive defendant's claim. *Id.* (internal citation omitted).

Furthermore, allegations of ineffectiveness in the entry of a guilty plea will only serve as the basis for PCRA relief where the alleged ineffectiveness rendered defendant's plea involuntary and unknowing. *Commonwealth v. Yager*, 685 A.2d 1000, 1003 (Pa. Super. Ct. 1996) (Affirming trial court's denial of PCRA relief despite colloquy deficiencies.); *Commonwealth v. Fears*, 86 A.3d 795, (Pa. 2014) (Affirming trial court's denial of PCRA relief where plea was knowing, voluntary, and intelligent.) In determining whether a guilty plea was entered knowingly and voluntarily, a court is free to consider the totality of the circumstances surrounding the plea. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. Ct. 2011) (Upholding plea despite defect in colloquy, where totality of circumstances indicated defendant's decision was knowing and voluntary.).[11] Given the high standard of proof necessary to set forth a viable ineffectiveness claim, it is generally more difficult to prevail on such a claim than one based on trial court error. *See Commonwealth v. Spotz*, 84 A.3d 294, 315 (Pa. 2014).

"Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa. Super. Ct. 2013) (internal citation omitted). Not only does the law not require that a defendant be pleased with the outcome of his decision to enter a plea of

---

[11] To determine the voluntariness of the plea and whether the defendant acted knowingly and intelligently, the trial court must, at a minimum, inquire into the following six areas:

    (1) Does the defendant understand the nature of the charges to which he is pleading guilty?

    (2) Is there a factual basis for the plea?

    (3) Does the defendant understand that he has a right to trial by jury?

    (4) Does the defendant understand that he is presumed innocent until he is found guilty?

    (5) Is the defendant aware of the permissible ranges of sentences and/or fines for the offenses charged?

    (6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

*Commonwealth v. Young*, 695 A.2d 414, 417 (Pa. Super. Ct. 1997).

guilty, but additionally he may not later assert grounds for withdrawing his plea that contradict his prior plea colloquy statements. *Commonwealth v. Willis*, 68 A. 3d 997, 1009 (Pa. Super. Ct. 2013) (internal citation omitted). Instead, a defendant who elects to plea has a duty to answer questions truthfully and is bound by the statements he makes. *Id.* at 1009.

Finally, with regard to Defendant's conflict of interest claims, the Pennsylvania Rules of Professional Conduct preclude a lawyer from representing individuals who possess adverse interests concurrently. *See e.g.*, Pa. R.P.C. 1.7-1.10. To establish a conflict of interest claim, a defendant must plead and prove that counsel actively represented conflicting interests, and the actual conflict adversely affected counsel's performance. *Commonwealth v. Tedford*, 960 A.2d 1, 54 (Pa. 2008). An actual conflict of interest "is evidenced whenever during the course of representation, the interests of appellant—and the interests of another client towards whom counsel bears obligations—diverge with respect to a material factual or legal issue or to a course of action." *Id.* (internal citation omitted). The burden of demonstrating a conflict of interest is on the petitioner and cannot be based on mere conjecture. *See Commonwealth v. Feliciano*, 69 A.3d 1270, 1275 (Pa. Super. Ct. 2013).

### A. The Court Properly Denied Defendant's Amended PCRA Petition

Based on the record before the Court, and most significantly the voluntary, knowing, and intelligent negotiated guilty plea Defendant entered into on March 8, 2012, this Court properly dismissed Defendant's *Pro Se* PCRA Petition. As addressed below, neither Mr. Bauer, Ms. Keagy, nor PCRA Counsel were conflicted or ineffective and the Court properly dismissed Defendant's PCRA Petition.

*i. Defendant's Underlying Claim Lacks Arguable Merit.*

At the time he accepted the negotiated guilty plea, Defendant faced more than 150 counts on his three 2011 files, which, in turn, also constituted Gagnon violations on his prior

11

2008 convictions. Even a cursory glance at the charges Defendant faced, including more than a dozen counts of Criminal Attempted Homicide and Arson,[12] reflect the seriousness of the fate Defendant faced when he accepted his negotiated guilty plea. Mr. Bauer, however, was able to negotiate a plea agreement with the Commonwealth, wherein it agreed to dismiss the vast majority of the counts against Defendant. [N.T. 3/8/12, at 9].

Defendant himself grasped the gravity of his situation, admitting even now as he seeks to castigate Mr. Bauer for advising him to plea, that Defendant was "confused and scared and didn't know what to do while facing such serious charges . . . ." [1925(b) Statement, at 5]. While he may have been confused and scared at some point prior to his plea, the record clearly demonstrates that at the time of his plea hearing Mr. Bauer had thoroughly discussed all of the material issues, ramifications, and defenses with Defendant. For his part, the record aptly reflects that Defendant unequivocally acknowledged that he understood the seriousness of his circumstances and that the purpose of his negotiated plea agreement was to "wrap up" all of his charges and Gagnon violations into one sentencing proceeding, and obviously avoid the catastrophic exposure he was facing.[13] Defendant testified that he was satisfied with Mr. Bauer's representation, and admitted all of the material facts supporting his underlying charges, including those material facts in the Grand Jury Presentment which the Court incorporated into the guilty plea record after which he unequivocally agreed that his decision to plead guilty was knowing, intelligent, and voluntary. [N.T. 3/8/12, at 8-10, 34, 40-41]. The record reflects that the Court confirmed that Defendant understood: (1) the nature of the charges to which he was pleading guilty; (2) the factual basis for his plea; (3) that he was giving up his right to trial by jury; (4) and the presumption of innocence; and (5) that he was

---

[12] [5175-11].

[13] [N.T. 3/8/12, at 38-39].

12

aware of the permissible ranges of sentences and fines possible. *See* Pa. R.Crim. P. 590; *see also, Commonwealth v. Prendes*, 97 A.3d 337, 352 (Pa. Super. Ct. 2014).

While Defendant claims he was pressured to accept the negotiated plea, the record reveals no such evidence. To the contrary, Defendant explicitly denied such claims when asked by Mr. Bauer. [N.T. 3/8/12, at 20-21]. To reiterate, a defendant may not later assert grounds for withdrawing his plea that contradict his guilty plea colloquy statements. *See Commonwealth v. Willis*, 68 A. 3d at 1009. Additionally, while Defendant says he was specifically threatened with more time if he proceeded to trial, such a claim does not necessarily rise to undue influence or duress. Based on the gravity of the charges Defendant faced, coupled with the probability that he would have been found guilty at trial, arguably Mr. Bauer would have been ineffective for <u>not</u> advising Defendant to accept the plea agreement. *See e.g. Commonwealth v. Copeland*, 554 A.2d 54, 60 (Pa. Super. Ct. 1988).

The Commonwealth, Mr. Bauer, and the Court each spent time explaining the facts, circumstances, and evidence supporting the negotiated plea agreement. For his part, Defendant never waivered during his March 8th hearing, and, instead repeatedly confirmed that he understood the ramifications of his decision to plead guilty and all of its associated consequences. As such, the Guilty Plea Colloquy in this case affirmatively demonstrates that Defendant understood the terms and consequences of the negotiated guilty plea. *See Commonwealth v. Willis*, 68 A.3d at 1002) (quoting *Commonwealth v. Lewis*, 708 A.2d 497, 501 (Pa. Super. Ct. 1998)). The record confirms that Defendant entered a voluntary, knowing, and intelligent plea to countless serious charges and in exchange received an agreed-upon sentence of twenty-five (25) to fifty (50) years of incarceration. By accepting the negotiated guilty plea Defendant avoided the potential imposition of a sentence well in excess if found guilty of all of the underlying crimes. Given the abundant evidence supporting Defendant's

13

guilt and the number of weighty charges Defendant faced, Mr. Bauer's advice to Defendant to accept the negotiated plea offer of twenty (25) to fifty (50) years of incarceration was well-reasoned.

With regard to Ms. Keagy, Defendant's claim of ineffectiveness is similarly misplaced. Ms. Keagy was appointed on February 16, 2011 to represent Defendant on only one of the cases at issue. [302-11]. Defendant was arrested on the charges of the instant case on June 30, 2011 and Ms. Keagy withdrew because of a conflict on September 7, 2011, when Mr. Bauer was appointed to represent Defendant on all files. Defendant's general assertion without any specifics as to Ms. Keagy is that she failed to provide Defendant with discovery, file pre-trial motions or challenge evidence. Not only does Defendant fail to provide any specifics as to Ms. Keagy's alleged failure during her 7 months of representation of Defendant, but in any event, as specifically stated on the record, Mr. Bauer discussed in detail with Defendant the Commonwealth's evidence and pretrial motions which could be filed and Defendant knowingly, intelligently, and voluntarily acknowledged that by virtue of his plea, he was giving up any such claims. [*See infra* N.T. 3/8/12, at 35]. Having failed to meet his burden of demonstrating a claim of arguable merit, Defendant's ineffectiveness claim against Mr. Bauer, and Ms. Keagy for that matter, fail.

Additionally, Defendant's new claim on appeal that PCRA Counsel had a conflict of interest and was, therefore, ineffective fails as well. To establish a conflict of interest a defendant has the burden of meeting a two-pronged analysis. First, he must plead and prove that counsel actively represented conflicting interests. Next, he must plead and prove that the actual conflict adversely affected counsel's performance. In this case, Defendant has failed to carry his burden of demonstrating either prong.

14

Defendant's sole basis for his claim that PCRA Counsel had a conflict is that PCRA Counsel is employed by the Public Defender, which represented certain co-Defendants when they appeared before the Grand Jury. More significant to the instant analysis is the fact that the record unequivocally reflects that any obligation once owed by the Public Defender's Office to any of the co-Defendants was extinguished in its entirety when the Court appointed private counsel to represent all of the co-Defendants, which was long before PCRA Counsel became involved in this case.[14] Defendant, therefore, fails to meet even his first hurdle of demonstrating that PCRA Counsel "actively" or concurrently represented conflicting interests. *See Tedford*, 960 A.2d at 53-54.

The standard which applies to Defendant's claim that PCRA Counsel was ineffective by virtue of his conflict of interest is the same standard recited above with regard to Defendant's other ineffectiveness claims. *Commonwealth v. Karenbauer*, 715 A.2d 1086, 1093-94 (Pa. 1998). The record, however, reflects that Defendant had the benefit of appointed private counsel throughout the period in which he entered his knowing, voluntary and intelligent guilty plea. Having concluded that Defendant has not met his burden with regard to establishing a conflict of interest existed, Defendant has also failed to demonstrate a claim of arguable merit which is required to prove ineffectiveness. Even if Defendant were able to convince this Court that PCRA Counsel possessed a conflict of interest, and that conflict precluded him from representing Defendant on his PCRA Petition, and that such a claim possessed the requisite arguable merit, such a contention would have and has had no substantive effect on this Court's conclusion that Defendant's plea was knowing, voluntary, and intelligent. Based on the Court's independent and extensive review of the record, exclusive of PCRA Counsel's analysis, Defendant has failed to muster any meritorious clams for review.

---

[14] [5168-11; 5169-11; 5170-11; 5171-11; 5172-11; 5173-11; 5174-11].

15

As previously discussed at length, Defendant was facing a realistic probability of the imposition of a significantly longer sentence than that which he negotiated and therefore, had a reasonable basis for entering his plea. Similarly, PCRA Counsel had a reasonable basis for his determination that Defendant's claims fail. As noted, PCRA Counsel's review provided just one prong of this Court's detailed and thorough analysis of Defendant's underlying claims. Ultimately, Defendant is now by PCRA attempting to assert grounds for withdrawing his plea that contradict his guilty plea colloquy statements.[15] This he cannot do, and therefore, any and all claims of ineffectiveness are waived. For all of the above-stated reasons, this Court's dismissal Defendant's PCRA Petition was proper.

## V. CONCLUSION

Accordingly, the trial court respectfully requests that its Order, dated June 18, 2014, denying Defendant's *Pro Se* PCRA Petition be AFFIRMED.

BY THE COURT:

THOMAS C. BRANCA,                    J.

Copies of the above Opinion
Mailed on: 11/1O14
By First Class Mail:
Augustus Simmons, Inmate # KL-2144, SCI-Greene, 175 Progress Drive, Waynesburg, PA. 15370
By Interoffice Mail:
Montgomery County District Attorney - Appellate Division
        Robert M. Falin, Esquire, Chief
Deputy Court Administrator-Criminal

Secretary

---

[15] *See Commonwealth v. Willis*, 68 A. 3d at 1009.

16