J-S27042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRANCE WASHINGTON, | : | |
| | : | |
| Appellant | : | No. 2125 EDA 2017 |

Appeal from the PCRA Order June 29, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0711021-1996,
CP-51-CR-0711091-1996, CP-51-CR-0711141-1996,
CP-51-CR-1009712-1996, CP-51-CR-1107481-1997,
CP-51-CR-1107621-1997, CP-51-CR-1107651-1997,
CP-51-CR-1107671-1997

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                          Filed July 20, 2018

Appellant, Terrance Washington, appeals from the June 29, 2017 Order

dismissing his Petition filed pursuant to the Post-Conviction Relief Act

("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A prior panel of this Court forth the facts and torturous procedural

history of this case as follows.

> [Appellant] was arrested and charged in connection with several
> robberies of state liquor stores committed in 1996.  While awaiting
> trial, [Washington] was placed on house arrest with electronic
> monitoring.  [Washington] removed his electronic ankle monitor
> and committed additional robberies.  Following a two-day jury trial
> in January 1998, [Washington] was found guilty of four counts of
> robbery, two counts of criminal conspiracy, two counts of
> violations of the Uniform Firearms Act (VUFA) and two counts of
> possessing an instrument of crime (PIC).  On January 21, 1998,
> [Washington] entered an open guilty plea on 17 additional counts
> of robbery, conspiracy, PIC, VUFA, and theft of firearms.  On

February 24, 1998, the trial court sentenced [Appellant] to an aggregate sentence of 35 to 70 years of state incarceration.

[Appellant's] Petition to Modify Sentence was denied on March 5, 1998. No direct appeal was filed. On December 14, 1998, [Appellant] filed a *pro se* Motion to file an appeal *nunc pro tunc*, alleging that counsel failed to file a timely requested direct appeal. On January 5, 2000, [Appellant] filed a PCRA Petition, which was subsequently denied. On appeal from that denial, the Pennsylvania Superior Court remanded the matter for a determination of which cases required the reinstatement of [Appellant's] direct appeal rights *nunc pro tunc*, since [Appellant's] December 1998 Motion should have been treated as a timely PCRA Petition. On October 14, 2003, [Appellant's] direct appeal rights were reinstated for seven of his eight cases…. The Pennsylvania Superior Court affirmed [Appellant's] convictions and sentence on October 14, 2005. **See Commonwealth v. Washington**, 890 A.2d 1109 (Pa. Super. 2005) (unpublished memorandum). [Appellant's] Petition for allowance of appeal to the Pennsylvania Supreme Court was denied on June 27, 2006. **See Commonwealth v. Washington**, 902 A.2d 1241 (Pa. 2006).

On January 24, 2006, [Appellant] filed a second *pro se* PCRA Petition, his 1998 *pro se* Motion having been treated as his first PCRA Petition. On July 24, 2007, the PCRA court conducted a **Grazier** hearing, and determined that [Appellant] could proceed *pro se*. On October 9, 2007, [Appellant] filed a *pro se* amended Petition. On May 12, 2008, the PCRA court sent [Appellant] a Pa.R.Crim.P. 907 Notice, notifying him that his Petition would be dismissed because it lacked merit. On August 6, 2008, after review of the PCRA Petition, the Commonwealth's Motion to dismiss, and [Appellant's] reply to the Rule 907 Notice, the PCRA court dismissed [Appellant's] PCRA Petition as being without merit. [Appellant] filed a Notice of Appeal directly with the Superior Court, which returned the appeal to [Appellant] since he had filed it in the wrong court. [Appellant] then sent his Notice of Appeal to the Court of Common Pleas. On November 5, 2008, the Court of Common Pleas Criminal Post-Trial Unit returned the appeal to [Appellant], indicating that it was untimely filed and that he "must file a PCRA to have his appeal rights reinstated."

[On November 20, 2008, Appellant] petitioned for PCRA Relief, seeking the reinstatement of his right to appeal the PCRA court's August 6, 2008 Order. [On February 4, 2011, t]he PCRA court

dismissed [Appellant's] PCRA Petition as untimely filed. On appeal, this Court reversed, reinstating Washington's right to appeal the PCRA court's August 6, 2008 Order. ***Commonwealth v. Washington***, 47 A.3d 1255 (Pa. Super. 2012) (unpublished memorandum).

***Commonwealth v. Washington***, No. 532 EDA 2011 (Pa. Super. filed May 12, 2015) (unpublished memorandum).

Following reinstatement of his appellate rights, Appellant appealed from the PCRA court's August 6, 2008 Order. Relevant to the instant matter, Appellant claimed in that appeal that his trial counsel was ineffective for failing to communicate a plea offer to him and for failing to call Zenata Harper as a trial witness. This Court held that the PCRA court erred in denying Appellant relief on these issues without holding an evidentiary hearing and remanded the matter to the PCRA court for an evidentiary hearing to address these claims. ***See id.***

On June 29, 2017, the PCRA court held a hearing on Appellant's claims. At the commencement of the hearing, Appellant's counsel informed the court that Appellant was abandoning his ineffectiveness claim as it pertained to Zenata Harper. N.T., 6/29/17, at 5-6. ***See also*** PCRA Ct. Op., 10/11/17, at 4. Thus, the court heard testimony related only to Appellant's claim that his counsel failed to communicate a plea offer to him.

Appellant testified on his own behalf, as did his trial counsel, Michael Contos, Esquire. The Commonwealth presented the testimony of three witnesses: Nigel Greene, Esquire, an assistant district attorney who was assigned to four of Appellant's cases; Robert Jovanov, Esquire, an attorney

- 3 -

who represented Appellant at his pretrial conference in December 1996 and the custodian of record for Appellant's file at the Defender Association; and Charles Junod, Esquire, an attorney who handled pretrial matters for the district attorney's office in 1996. Counsel also stipulated to the testimony of former public defender, Maureen McCartney.[1]

Following the evidentiary hearing, the PCRA court denied Appellant's claim for relief. This appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> Did the PCRA [c]ourt err in again dismissing Appellant's PCRA Petition because the evidentiary hearing indicated that trial counsel knew of a global offer of 20 to 40 years or 25 to 50 years but did not discuss the offer with Appellant and because counsel was *per se* ineffective, there was no strategic excuse for this ineffectiveness, and Appellant suffered prejudice?

Appellant's Brief at 4.

Appellant appeals from the denial of his PCRA petition. Our standard of review is well-settled. We review the denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Faulk*, 21 A.3d 1196, 1199 (Pa. Super. 2011). To be eligible for relief pursuant to the PCRA, Appellant must establish, *inter alia*, that his conviction or sentence resulted

---

[1] We adopt the PCRA court's summary of the testimony. *See* PCRA Ct. Op. at 4-8.

from one or more of the enumerated errors or defects found in 42 Pa.C.S.A. § 9543(a)(2).

To obtain relief under the PCRA on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (citing 42 Pa.C.S. § 9543(a)(2)(ii)). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* (citation omitted). This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *See id.* at 533; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

Appellant argues that Attorney Contos was ineffective in failing to communicate a plea offer made by the Commonwealth. In particular, Appellant alleges that Attorney Contos knew of a "global offer" for all of his charges of either 20 to 40 years' or 25 to 50 years' incarceration, but did not discuss the offer with Appellant. Appellant's Brief at 14. Appellant also claims that he is entitled to relief because the Commonwealth "offered no evidence

to rebut the fact that there was such an offer at the time of trial because" the assistant district attorney who prosecuted the case did not testify at the evidentiary hearing. *Id.* at 14-15. Appellant avers that his counsel's strategy "had no reasonable basis and bordered on insanity," and that his counsel's conduct prejudiced him because he is currently serving a sentence in excess of the one "associated with the global plea deal." *Id.* at 15.

In order to be entitled to relief on a claim that trial counsel failed to communicate a plea offer, a petitioner must plead and prove that "(1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby." *Commonwealth v. Copeland*, 554 A.2d 54, 61 (Pa. Super. 1988).

The Honorable Genece Brinkley has authored a comprehensive, thorough, and well-reasoned Rule 1925(a) Opinion, citing the record and relevant case law in addressing Appellant's ineffectiveness claim. After a thorough review of the certified record, including the Notes of Testimony from Appellant's evidentiary hearing, the briefs of the parties, the applicable law, and the PCRA court's Opinion, we conclude that there is no merit to Appellant's claim. Accordingly, we adopt that Opinion as our own and affirm the court's denial of PCRA relief. *See* PCRA Ct. Op at 9-16 (concluding, *inter alia*, that Appellant failed to establish each of the prongs set forth in *Commonwealth v. Copeland*, 554 A.2d 54 (Pa. Super. 1988) because (1) Appellant failed to show that the Commonwealth had extended a "global offer" of 20 to 40 years

or 25 to 50 years because at the time he claims the Commonwealth made this offer his later cases were still in the preliminary hearing stage and were not yet ready for plea negotiations; (2) the January 7, 1998 docket notation marked "offer rejected" was most likely a clerical error; (3) there is no evidence that the Commonwealth ever made any offer with respect to Appellant's four 1997 cases; (4) Appellant failed to prove that his attorneys failed to convey offers to him or lacked a reasonable basis for doing so as the evidence demonstrated that the Commonwealth made two separate offers of which Appellant's counsel informed him and he formally rejected; (5) Attorney Contos's testimony evidenced a reasonable basis for not conveying certain plea offers to Appellant; and (6) Appellant failed to demonstrate that he suffered prejudice because the "global offer" he relies upon to support this prong never existed).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2018

- 7 -

FILED

OCT 1 1 2017

Office of Judicial Records
Appeals/Post Trial

**IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH** | : | **CP-51-CR-0711021-1996** |
| | : | **CP-51-CR-0711091-1996** |
| | :. | **CP-51-CR-0711141-1996** |
| **VS.** | CP-51-CR-1107481-1997 Comm v Washington Terrence Opinion | **CP-51-CR-1009712-1996** |
| | | **CP-51-CR-1107481-1997** |
| | | **CP-51-CR-1107621-1997** |
| | | **CP-51-CR-1107651-1997** |
| | 8014681081 | **CP-51-CR-1107671-1997** |
| **TERRENCE WASHINGTON** | : | **2125 EDA 2017** |

**OPINION**

**BRINKLEY, J.**                                                                  **OCTOBER 11, 2017**

Defendant Terrence Washington filed his third *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541 *et seq.* After conducting an evidentiary hearing on the matter, this Court dismissed Defendant's petition as meritless. Defendant filed a Notice of Appeal to Superior Court and raised the following issue on appeal: whether the PCRA court erred in dismissing Defendant's petition after conducting an evidentiary hearing to determine whether trial counsel failed to offer Defendant "a global offer of 20 to 40 years or 25 to 50 years," where the PCRA court found that trial counsel was not ineffective and concluded that Defendant failed to meet his burden under Commonwealth v. Copeland.[1] Accordingly, this Court's dismissal of Defendant's petition should be affirmed.

**Background**

Defendant was arrested and charged in connection with several gun-point robberies of state liquor stores committed in 1996. While he was awaiting trial on house arrest with electronic

---

[1] 54 A.2d 54 (Pa.Super.1998)

monitoring, Defendant removed his electronic ankle bracelet and committed additional robberies, some even at the very same liquor stores he had robbed before. Defendant was arrested again and taken into custody. Following a two-day trial in January 1998, a jury found Defendant guilty of four counts of robbery, two counts of criminal conspiracy, two violations of the Uniform Firearms Act (VUFA), and two counts of possessing an instrument of crime (PIC).[2] On January 21, 1998, Defendant entered an open guilty plea on 17 additional counts of robbery, conspiracy, VUFA, PIC, and theft of firearms.[3] On February 24, 1998, this Court sentenced him to an aggregate sentence of 35 to 70 years state incarceration.

Defendant filed a petition to modify sentence. This was denied on March 5, 1998. No direct appeal was filed. On December 14, 1998, Defendant filed a *pro se* motion to file an appeal *nunc pro tunc*, alleging that trial counsel failed to file a timely direct appeal. On January 5, 2000, Defendant filed his first PCRA petition, which this Court dismissed as untimely. Defendant appealed this dismissal; the Superior Court remanded the matter for a determination of which of Defendant's eight dockets required reinstatement of direct appellate rights as the Superior Court found that Defendant's December 1998 motion should have been treated as a timely first PCRA petition. On October 14, 2003, Defendant's appellate rights were reinstated for seven of his eight cases.[4] He filed a Notice of Appeal on October 27, 2003. The Superior Court affirmed Defendant's convictions and sentence on October 24, 2005. Defendant's Petition for Allowance of Appeal to the Pennsylvania Supreme Court was denied on June 27, 2006.

---

[2] The jury convictions were for docket numbers. CP-51-CR-0711021-1996, CP-51-CR-0711091-1996; CP-51-CR-0711141-1996; CP-51-CR-1009712-1996.

[3] The open plea was for docket numbers: CP-51-CR-1107481-1997; CP-51-CR-1107621-1997; CP-51-CR-1107651-1997; CP-51-CR-1107671-1997.

[4] Due to an error in paperwork, on February 24, 1998, Defendant was sentenced on only seven docketed cases. Defendant was separately sentenced with respect to an eighth docketed case on December 17, 1998. The Court sentenced him to a concurrent sentence of 5 to 10 years state incarceration. The Superior Court later disposed of this charge.

2

While his Petition for Allowance of Appeal was still pending before the Pennsylvania Supreme Court, Defendant filed a second *pro se* PCRA petition on January 24, 2006. On October 9, 2007, Defendant filed a *pro se* Amended Petition. On August 6, 2008, this Court dismissed Defendant's petition as meritless. Defendant filed a Notice of Appeal directly with the Superior Court, who returned the appeal to Defendant since he should have filed it with the Court of Common Pleas. Defendant then forwarded his Notice of Appeal to the Court of Common Pleas, who returned it to Defendant on November 5, 2008 and informed him that it was filed untimely and that he "must file a PCRA to have [his] Appeal Rights reinstated."

On November 20, 2008, Defendant filed his third *pro se* PCRA petition, seeking permission to appeal *nunc pro tunc* the dismissal of his prior PCRA petition. On May 14, 2010, this Court conducted an evidentiary hearing, at which time appointed PCRA counsel Norman Scott, Esquire argued that Defendant's third PCRA petition should not be barred for untimeliness. On February 4, 2011, after review of Defendant's reply to the 907 notice, Defendant's *pro se* petition, Defendant's *pro se* amended petition, counsel's amended petition, the Commonwealth's letter brief, Defendant's response to the Commonwealth's letter brief, and relevant case law and statutes, this Court dismissed the petition as untimely. On February 22, 2011, Defendant filed a *pro se* Notice of Appeal.

On September 20, 2012, the Superior Court reinstated Defendant's appellate rights *nunc pro tunc*. The Superior Court then ordered the parties to brief the issues preserved for appeal, which they did. On May 12, 2015, the Superior Court reversed the PCRA court's dismissal of Defendant's third PCRA petition and remanded the matter, instructing this Court to conduct an evidentiary hearing in order to determine (1) whether trial counsel was ineffective for failing to

3

call Zenata Harper as an alibi witness at trial and (2) whether trial counsel was ineffective for failure to communicate a plea offer.

On June 29, 2017, this Court conducted an evidentiary hearing to determine whether trial counsel had been ineffective with respect to the two issues identified by the Superior Court. Defendant, appearing via video, was represented at this proceeding by Stephen O'Hanlon, Esquire. Patrick Blessington, Esquire appeared on behalf of the Commonwealth. Mr. O'Hanlon informed this Court that Defendant no longer wished to proceed on the alibi issue,[5] but would go forward with his claim that trial counsel was ineffective for failing to communicate a plea offer.

Defendant testified first on his own behalf. He stated that while his case was still on direct appeal, he reviewed the docketing sheet that included docket entries from 1996 through 2003. He testified that he saw three separate entries (September 3, 1996; December 9, 1996; and January 7, 1998) that were marked "offer rejected." Defendant testified that he did not remember his attorneys telling him about any offers on or around those dates and he did not recall rejecting any plea offers immediately prior to those dates. Defendant denied that his trial attorney ever informed him of a 15 to 30 years "global plea" offer for all of his robbery cases. Defendant stated that after he saw the "offer rejected" docket entries, he wrote letters to the Defenders Association of Philadelphia for more information but never received a response. Defendant testified that if he had been offered 15 to 30 years state incarceration or 30 to 60 years state incarceration, he would have considered a negotiated plea deal. (N.T. 6/29/17, p. 12-17).

On cross-examination, Commonwealth counsel Mr. Blessington produced the Defenders Association's files from Defendant's cases and reviewed documents from those files with

---

[5] Attached to Defendant's amended PCRA petition was an affidavit purportedly signed by Zenata Harper. Ms. Harper appeared at the evidentiary hearing on June 29, 2017 and intended to testify that the affidavit was a forgery and was not prepared or signed by her. She left when Defendant stated that he no longer wished to proceed on the alibi claim.

4

Defendant. Defendant denied telling trial counsel Michael Contos, Esquire[6] that he planned to fight his cases and win. He further denied telling counsel "no plea" on August 29, 1996, as was recorded in the file notes from that day. Defendant further denied meeting with public defenders Richard "Dick" Marvin and Maureen McCartney and telling them that he wanted to "rumble with juries." He stated that he could not recall meeting with public defender Robert Jovanov on December 4, 1996 and did not remember rejecting a plea of 15 to 30 years on one robbery case. Defendant testified that he had no memory of meeting with counsel on November 5, 1997 and telling him that he was "looking for [a plea deal of] 7 ½ or 10 to something." Defendant denied ever having any conversation with Ms. McCartney regarding any plea offers. Id. at 17-44.

Michael Contos, Esquire [Contos], testified next for the defense. He stated that in 1998, he worked at the Defenders Association of Philadelphia and he represented Defendant at trial on four of his robbery cases. He also represented Defendant during sentencing on all cases. Contos testified that he never discussed negotiated plea deals with Defendant because Defendant seemed very eager to take his cases to trial after having rejected the offers made to him through prior counsel working on the case. He stated that Defendant never asked him about an aggregate plea offer for all of his cases. Contos testified that after Defendant was found guilty on four robbery cases at his jury trial, he worked with Defendant on the open plea process with respect to the remaining four robbery cases. Id. at 47-51.

On cross-examination, Contos testified that Defendant never told him that he wanted to plead guilty. Contos reviewed a memo in the file written by Ms. McCartney, in which she recorded, "When I last talked to defendant on October 19, 1997, he said he wanted to rumble ("rumble" was underlined twice) with juries on all cases. At this point, too, DA is unwilling to

---

[6] Defendant was represented at trial by the Defenders Association of Philadelphia. Several public defenders worked on his case in the pre-trial stage. Michael Contos, Esquire represented Defendant at trial.

5

make offer on whole package. New cases are not even through the preliminary hearing stage. The offer for his four cases already at trial stage is around 20 to 25 years. Defendant is not difficult or obnoxious to deal with, just very unrealistic." Id. at 58. Contos stated that he seemed to recall an offer of either 20-40 years or 25-50 years. Id. On re-direct, Contos testified that he remembered an offer of 20 to 40 years on all the cases, and that he did not discuss the offer with Defendant. Id. at 59-60. On re-cross, Contos testified that by "all the cases," he only meant those ready for trial, not the new cases still in the preliminary hearing stage. Id at 63. At the conclusion of Contos' testimony, the defense rested.

Nigel Greene, Esquire ("Greene") testified first for the Commonwealth. He testified that in 1997 he worked as an assistant district attorney (ADA). He stated that he was specially assigned to four of Defendant's cases: CP-51-CR-100748-1997; CP-51-CR-110762-1997; CP-51-CR-110765-1997; CP-51-CR-110767-1997, meaning that he would follow the cases through each stage of proceedings rather than pass them off to another ADA. Greene testified that he began working on the cases on November 17, 1997. After reviewing the case files and his notations within, Greene testified that no offer was made at the pretrial conference on January 7, 1998. Greene stated that if an offer had been made, it would have been indicated on the covers of the files and would have included the terms of the offer, when it was offered, and how long the offer was available. He further testified that he had no knowledge of a "global offer" that would encompass all of Defendant's cases, pointing out that when the previous offers were made in 1996, Defendant hadn't even been arrested yet on the four newer robbery cases. Greene further testified that Defendant entered into an open plea on January 21, 1998 on the four newer robbery cases, which indicated to Greene that there was no offer pending since an "open plea" meant Defendant was pleading guilty "without any promises or deals in place." Id. at 66-75.

6

Robert Jovanov, Esquire ("Jovanov") testified next for the Commonwealth. The Commonwealth offered him as the custodian of record for Defendant's file at the Defender's Association. Additionally, Jovanov represented Defendant at his pretrial conference in December 1996. He testified that he met with Defendant at the prison on December 4, 1996 and conveyed the offer tendered by ADA Sweeney on CP-51-CR-1009712-1996: 15 to 30 years state incarceration on three counts of Robbery graded as felonies of the first degree, a violation of the Uniform Firearms Act graded as a felony of the third degree, and Conspiracy graded as a felony of the second degree. Jovanov testified that his notes from his meeting with Defendant indicate "offer rejected." Jovanov then read aloud from a document dated August 29, 1996, wherein Dick Marvin[7], head of the majors division at the time, had written "I spoke to defendant at CFCF. No plea." Jovanov then retrieved another document from the file box marked "client interview," dated October 15, 1997. Jovanov read aloud from this document, "Defendant states has alibi witness for times of robberies on Fridays. He attends church services on Saturdays with his son's mother." Jovanov also read aloud from a handwritten note in the file dated December 10, 1997 written by Jeffrey Jay Penneys, Assistant Chief of Majors at the Defenders Association at that time. This note stated, "Both Jerry Malin and Maureen McCartney [staff attorneys] tried to work out a deal for defendant but he then balked and dug his heels in and now refuses to plea. His only hope is to plead before Temin, but I have no reason to believe he will even consider it." Id. at 77-93.

Charles Junod ["Junod"] testified next for the Commonwealth. He stated that in 1996 he was employed by the Philadelphia District Attorney's Office and handled pretrial matters. He reviewed the files for three of the cases and stated that there was an offer sheet dated September

---

[7] Mr. Marvin is deceased  His notes from the files were read into the record by Mr. Jovanov

7

3, 1996 in the file for CP-51-CR-0711021-1996, which also included two other docket numbers CP-51-CR-0711091-1996 and CP-51-CR-0711141-1996. Junod testified that the offer was as follows: 15 to 30 years incarceration on five counts of Robbery (F1), three counts of Conspiracy (F2), three counts of VUFA (F3). Junod then reviewed an offer sheet for case number CP-51-CR-100971-1996 dated December 9, 1996. On this case, the offer was 15 to 30 years incarceration on three counts of Robbery (F1), one count of VUFA (F3), and one count of Conspiracy (F2). Addressing the alleged discrepancy between Nigel Green's testimony regarding the file not showing an offer was made and the court docket indicating that an offer had been rejected, Junod testified that based upon his 19 years of experience working on pretrial matters, when a matter was at the pretrial stage, either a defendant would accept a plea or it would be sent to trial. If sent to trial, the file "would be marked 'offer rejected' with the assumption that there had been an offer." He testified that Defendant's matters were listed in a very busy, high volume courtroom where clerical errors were not uncommon  Counsel then stipulated that the file in question was not marked in any way regarding an offer. Id. at 105-115.

Next, counsel entered evidence by way of stipulation by and between counsel. Counsel stipulated that if called to testify, Maureen McCartney, a former public defender, would state that in October 1997, she wrote a note in the file that "this defendant is in big trouble" and that the defendant "indicated he wanted to rumble with juries." Id. at 121-122.

After hearing closing arguments by counsel, this Court found that Defendant had not met his burden of proof under Coleman and denied his claim for relief.

On June 30, 2017, Defendant filed a Notice of Appeal to Superior Court. On August 3, 2017, upon receipt of all Notes of Testimony including the June 29, 2017 evidentiary hearing, this Court ordered that Defendant file a Concise Statement of Errors Complained of on Appeal

8

Pursuant to Pa. R.A.P. 1925(b) and defense counsel did so on August 8, 2017. Defendant raised the following sole issue on appeal: whether the PCRA court erred in dismissing Defendant's petition after conducting an evidentiary hearing to determine whether trial counsel failed to offer Defendant "a global offer of 20 to 40 years or 25 to 50 years." This Court's dismissal of Defendant's PCRA petition should be affirmed.

## Discussion

This Court properly dismissed Defendant's PCRA petition because there was no evidence to support Defendant's claim that trial counsel was ineffective for failing to convey a plea offer. There was no evidence that an alleged 20 to 40 year or 25 to 50 year "global offer" that included all eight of Defendant's robbery cases existed and there was no evidence that trial counsel failed to convey this alleged offer. This claim is without merit.

When reviewing the denial of PCRA relief, the appellate court's review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. Commonwealth v. Breakiron, 566 Pa. 323, 781 A.2d 94, 97 n. 4 (2001). The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in light most favorable to the prevailing party. Commonwealth v. Duffey, 585 Pa. 493, 889 A.2d 56, 61 (2005). The burden is on the petitioner in the PCRA petition to demonstrate by a preponderance of the evidence that he or she is eligible for PCRA relief. 42 Pa.C.S. § 9543.

Under the law of this Commonwealth, counsel is presumed to be effective and the defendant has the burden of proving otherwise. Commonwealth v. Reaves, 592 Pa. 134, 923 A.2d 1119, 1124 (2007). In order to be eligible for relief based upon ineffective assistance of counsel under the PCRA, a petitioner must demonstrate by a preponderance of evidence that (1)

9

the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission; and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error." Commonwealth v. Pander, 100 A.3d 626, 630 (Pa.Super. 2014). The failure to satisfy any prong of this test will cause the entire claim to fail. Commonwealth v. Bath, 2006 PA Super. 235, 907 A.2d 619, 622 (2006) (citing Commonwealth v. Bridges, 584 Pa. 589, 886 A.2d 1127, 1131 (2005)); see also Commonwealth v. Harris, 578 Pa. 377, 852 A.2d 1168, 1173 (2004) ("where an appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone").

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative not chose, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to determine confidence in the outcome.

Commonwealth v. Stewart, 84 A.3d 701, 706-07 (Pa.Super.2013).

In order to establish counsel's ineffectiveness specifically based upon the failure to communicate a plea offer, the petitioner must demonstrate: "(1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby." Commonwealth v. Copeland, 54 A.2d 54, 61 (Pa. Super. 1988). "[I]n assessing claims of [ineffective assistance of

10

counsel], the court's evaluation of counsel's performance must be 'highly deferential,' its determination based not upon 'the distorting effects of hindsight,' but upon a preponderance of the evidence in each of the three categories." Commonwealth v. Chazin, 873 A.2d 732, 734 (2005) (quoting Commonwealth v. Basemore, 560 Pa. 258, 744 A.2d 717, 735 (2000)) (citations omitted for clarity).

In the case at bar, Defendant has failed to meet his burden of proving each prong set forth in Copeland. Defendant argues that several negotiated plea offers were made to him because the docket entries from September 3, 1996; December 9, 1996; and January 7, 1998 state "offer rejected." He testified that he could not recall ever hearing about these offers, that he never rejected any offers, and that he would have considered these offers had he been informed. (N.T. 6/29/17, p. 14-16). Defendant's only witness, other than himself, was his trial attorney Michael Contos, Esquire, who testified that he did not convey any offers to Defendant because Defendant had rejected all prior offers from previous counsel. Contos further testified that Defendant did not ask about any offers and that Defendant was eager to take his case to trial. Contos testified that he remembered a 20 to 40 years or 25-50 year offer at some point, but that it only included those three matters ready for trial, and not the new robbery cases committed in 1997 that were still at the preliminary hearing stage. Id. at 47-51 This evidence is insufficient to meet Defendant's burden.

First, Defendant has failed to show that a "global offer" of 20-40 years or 25-50 years state incarceration ever existed. To support his claim that the Commonwealth made this offer and trial counsel failed to convey it, Defendant points to a January 7, 1998 docket entry which states, "Offer rejected." He claims that this was when the global offer allegedly was conveyed to trial counsel Contos but never discussed it with Defendant. This claim is entirely without merit. At

11

the time Defendant was entertaining offers on the 1996 cases and preparing for trial on those matters, all of the 1997 cases were still in the preliminary hearing stage and were not yet ready for plea negotiations. Therefore, there could not have been an aggregate offer on all cases at that time. Moreover, there is no record in either the Commonwealth's or the Defender's Association's files of any offer being conveyed in January 1998. Greene, the assistant district attorney who prosecuted Defendant's case, testified that his notes reflected a pretrial conference on January 7, 1998 but there was no offer made at that time. He testified that if an offer had been made, the details would have been recorded on the file cover itself and the offer would have been incorporated into the file itself so that anyone accessing the file would have been aware of the terms of the offer. Greene testified that there was no offer sheet and no notations to that effect. When asked regarding the discrepancy between Green's testimony and the docket entry for January 7, 1998, Junod testified that Defendant's cases were being handled in the pre-trial stage in a high-volume courtroom that handled 50 to 100 cases per day and that mistakes in the docket annotations routinely happened. Id. at 118. He testified that if there had been an offer to convey, Greene would have been the person responsible for conveying it to defense counsel. Id. at 120. He further testified that in a pretrial room, either a plea offer would be accepted or the case would go to trial and the matter would be marked "offer rejected" with the assumption that there had been an offer. Id. at 117. Therefore, the fact that the docket entry on January 7, 1998 was marked "offer rejected" is not proof that an offer was, in fact, made to Defendant on that day. Greene stated he did not make such an offer, nor did Junod. Based upon the testimony at trial, this docket entry was more than likely a clerical error.

12

Indeed, the only mention of a "20 to 40 or 25 to 50 year" offer was in McCartney's note to file, which stated:

> This defendant is big trouble. Had four cases in September. My three and one case listed in front of Judge Snite. They are all liquor store robberies wherein the Commonwealth has a horrendous amount of evidence: fingerprints, tapes, recovered property, a gun. Defendant was released on [600E] to house arrest and cut off his bracelet, then committed a number of new liquor store robberies. Believe it or not, he robbed some of the same stores. I spoke with the defendant about his situation, and I believe he is fully aware of the stakes in these cases as well as the chances of success. When I last talked to defendant on October 19, 1997, he said he wanted to rumble with juries on all cases. At this point, too, DA is unwilling to make offer on whole package.
>
> New cases are not even through the preliminary hearing stage. The offer for his four cases already at trial stage is around 20-25 years. Defendant is not difficult or obnoxious to deal with, just very unrealistic.

(N.T. 6/29/17, p. 57-58). McCartney represented Defendant prior to Contos taking over the case for trial. Contos testified that he seemed to remember something about a 20 to 40 years or 25-50 years offer on Defendant's cases ready to go to trial, but that he did not discuss this offer with Defendant as Defendant was enthusiastic about taking his cases to trial. This testimony makes sense as Contos testified that he reviewed McCartney's notes while preparing for trial and would have seen that she had written a note about an offer of "around 20-25 years." Contos testified that he also had seen McCartney's notes that Defendant was "unrealistic," wanted to "rumble with juries on all cases," and that the Commonwealth was unwilling to make an offer on the "whole package." None of this evidence supports Defendant's claim that a "global offer" on all of his cases was ever made.

13

Furthermore, there is no evidence that an offer was ever made with respect to any of the four 1997 robbery cases (CP-51-CR-110748-1997; CP-51-CR-110762-1997; CP-51-CR-110765-1997; CP-51-CR-110767-1997). On October 14, 1997, Defendant's public defender at the time wrote a note in the file for CP-51-CR-1107621-1997, stating that Defendant claimed to have alibis for the robberies that took place on Fridays and Saturdays. There was no mention of discussing a plea offer on that date. At the hearing, counsel stipulated that if public defender Maureen McCartney were called to testify, she would testify that in October 1997, she met with Defendant and made the following notes to file: "When I last talked to defendant on October 19, 1997, he said he wanted to rumble with juries on all cases. **At this point, too, DA is unwilling to make offer on whole package.**" (N.T. 6/29, p. 57-58, 121) (emphasis added). In addition, the file notes from CP-51-CR-1107481-1997, dated December 10, 1997 and written by Jeffrey Jay Penneys, then-Assistant Chief of Majors at the Defenders Association, state that "both [public defenders] Jerry Malin and Maureen McCartney tried to work out a deal for defendant but he balked and dug his heels in and now refuses to plead." Id. at 93. The note further stated that Defendant's "only hope is to plead before Temin," but that there was "**no reason to believe he will even consider it.**" Id. (emphasis added). Thus, there is nothing in any of the public defenders' files that would suggest that there was a plea offer on any of Defendant's 1997 cases or that Defendant was even open to considering any offers. Indeed, the notes written by his attorneys strongly suggest the opposite, namely, that Defendant was unwilling to plead and was eager to have a jury trial.

Second, Defendant has failed to prove that his attorneys failed to convey offers to him or lacked a reasonable basis for not doing so. Despite Defendant's claims that none of his defense counsel ever discussed any plea offers with him at any time, the evidence adduced at the

14

evidentiary hearing showed that the Commonwealth made two separate offers to Defendant and that these were conveyed to him by counsel. In August 1996, the Commonwealth made an offer to Defendant for 15 to 30 years state incarceration on three docket numbers (CP-51-CR-0711021-1996; CP-51-CR-0711091-1996; CP-51-CR-0711141-1996). Public defender Dick Marvin's notes indicate that he visited Defendant at CFCF on August 29, 1996 and Marvin marked the filed "no plea." On September 3, 1996, Defendant formally rejected the offer and this was reflected on the docket. In December 1996, the Commonwealth offered an additional 15 to 30 years state incarceration on docket number CP-51-CR-1009712-1996. Jovanov testified that he discussed the offer with Defendant in jail on December 4, 1996 and that Defendant told him that he had an alibi and did not wish to plead. This offer was formally rejected on December 9, 1996. Thus, there is record of only two offers made to Defendant: 15 to 30 years state incarceration on cases CP-51-CR-0711021-1996; 0711091-1996; 0711141-1996, and 15 to 30 years state incarceration on CP-51-CR-1009712-1996, for a total of 30 to 60 years state incarceration. The evidence shows that Defendant was presented these offers, considered them, and ultimately rejected them.

Defendant's trial counsel, Mr. Contos admitted that he did not convey any offers to Defendant; however, he had a reasonable basis for doing so. Contos testified that he did not discuss any plea deals with Defendant because Defendant was so eager to have his case presented to a jury. As discussed above, Contos testified that he remembered something about an offer of either 20 to 40 years state incarceration or 25 to 50 years state incarceration on the cases that were ready for trial, but stated that he did not discuss pleading guilty with Defendant since Defendant had rejected all prior offers. Specifically, Contos stated, "It was my understanding that he spoke to other previous attorneys with the public defender's office, and whatever offers

15

there were he had rejected it. And reviewing the file, I figured, you know, he wants a trial. I'm not going to ask for a continuance. We're going to trial." Id. at 49-50. As discussed at length above, all of the public defenders' notes to file describe Defendant as unwilling to plead and very eager to take his cases to trial. Based upon Defendant's history of rejecting offers and Defendant's enthusiasm to go to trial, Contos had a reasonable basis for not reiterating prior offers made to Defendant.

Last, Defendant has failed to demonstrate that he was prejudiced. Defendant claims he was prejudiced because would have seriously considered an global offer of 20 to 40 years or 25 to 50 years state incarceration. There is no evidence that such an offer ever existed. The only offers ever put forth by the Commonwealth were 15 to 30 years state incarceration on three cases and 15 to 30 years state incarceration on a fourth case, for an aggregate sentence of 30 to 60 years on the four 1996 robbery cases. No offers were ever made for the four 1997 cases. Ultimately, Defendant was sentenced to an aggregate sentence of 35 to 70 years state incarceration on all eight of his robbery cases. If Defendant had taken the Commonwealth's offers on just the four 1996 cases, he would have been sentenced to 30 to 60 years state incarceration. Thus, to have suffered prejudice, the Commonwealth would have had to offer him a sentence of less than 5 to 10 years on the four 1997 cases. It is highly improbable that a separate offer on the four 1997 cases, which consisted of an additional 17 counts of robbery, conspiracy, VUFA, PIC and theft of firearms, would have been less than 5 to 10 years state incarceration and resulted in a shorter sentence. Thus, Defendant has failed to show that he suffered prejudice. Accordingly, this Court's dismissal of Defendant's PCRA petition as meritless should be affirmed as Defendant has failed to prove the four prongs set forth in Copeland.

16

## CONCLUSION

After reviewing all relevant statutes, testimony and case law, this Court committed no error. This Court properly dismissed Defendant's PCRA petition as meritless as there is no evidence that a "global offer" of 20 to 40 years or 25 to 50 years existed and that trial counsel failed to convey this alleged plea offer to Defendant. Accordingly, this Court's decision to dismiss Defendant's petition should be affirmed.

BY THE COURT:

17