554 A.2d 54

**COMMONWEALTH of Pennsylvania**

v.

**Mitchell COPELAND, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1988.

Filed Dec. 21, 1988.

Reargument Denied Feb. 28, 1989.

384

William P. Fedullo, Philadelphia, for appellant.

Suzan Willcox, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, McEWEN and MELINSON, JJ.

WIEAND, Judge:

Mitchell Copeland was tried by jury and was found guilty of murder in the first degree. Post-trial motions were denied, and Copeland was sentenced to serve a term of life imprisonment. A direct appeal was filed in the Superior Court, after which trial counsel was permitted to withdraw and present counsel was appointed. The arguments now made in the direct appeal are that (1) the trial court erred in denying a motion to suppress statements which appellant had made to police; (2) the prosecuting attorney was guilty of misconduct in the delivery of the opening and closing addresses; (3) the trial court's rulings and responses to defense counsel demonstrated bias and prejudice; (4) the trial court erred in refusing to admit photographs of burns which appellant had allegedly sustained prior to the killing; (5) the trial court erred when it refused to instruct the jury that throwing hot water or acid on a person could be deemed adequate provocation within the definition of voluntary manslaughter; and (6) trial counsel rendered ineffective assistance. We find no merit in Copeland's first five contentions but remand for an evidentiary hearing on his claim that defense counsel rendered ineffective assistance when he failed to convey to his client a plea bargain offered by the Commonwealth.

On July 27, 1985, at or about 10:40 p.m., the battered and blood covered body of seventy year old Victoria Alford was found by police in the kitchen of an apartment which she had shared with appellant. Appellant was found shirtless

near the body of the decedent. He had blood and scratch marks on his neck and shoulders, and on his chest were red blotches which appeared rash-like. His sneakers were also covered with blood and had made imprints in the blood around the victim's body. Appellant initially denied culpability. Later, at the police administration building, after having been informed of his *Miranda* rights for a second time, appellant gave a written statement in which he said that he had slapped and shoved Ms. Alford after she had burned him by throwing hot water on his chest. As to Alford's death, appellant suggested that she must have fallen and struck her head. Police took photographs of appellant's chest and then took him for preliminary arraignment about 4:00 a.m. the next morning. He was thereafter taken to the hospital for treatment and was found to have sustained second degree burns of his chest.

Post-mortem examination of the victim revealed more than one hundred abrasions of her body. The absence of fractures suggested repeated blows of moderate force, inflicted by a relatively soft object. Other evidence prompted an opinion that blows had been inflicted while the victim was alive but in a prone position, perhaps by being kicked by a person wearing sneakers.

Appellant's contention that the trial court erred by refusing to suppress evidence of his oral and written statements has been waived. The court's suppression ruling was not alleged as error in appellant's post-trial motions or supplemental post-trial motions. It is well settled that only issues raised in post-trial motions are preserved for appellate review. *Commonwealth v. Gravely,* 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979); *Commonwealth v. Heckman,* 366 Pa.Super. 224, 227, 530 A.2d 1372, 1373 (1987); *Commonwealth v. Thier,* 354 Pa.Super. 7, 9, 510 A.2d 1251, 1252 (1986), *alloc. denied,* 515 Pa. 578, 527 A.2d 539 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 142, 98 L.Ed.2d 98 (1987). Moreover, after reviewing the record of the pre-trial suppression hearing and the findings made by

the hearing court, we are satisfied that appellant's suppression motion was properly denied.

Because appellant failed also to preserve in post-trial motions the alleged misconduct of the prosecuting attorney, this issue, too, has been waived.

■ We find no merit in appellant's contention that the trial court demonstrated bias and prejudice against the defense. Although there were several acrimonious exchanges between the trial judge and defense counsel, our review of the record discloses that they were almost uniformly precipitated by defense counsel's angry responses to rulings made by the trial judge. When the exchanges between court and counsel are examined in the context in which they occurred, it cannot be said that the trial judge demonstrated a failure to preside in an impartial and even-handed manner.

■ At trial, appellant's defense was that the victim had provoked retaliation by throwing either hot water or sulphuric acid on his chest and that his crime, therefore, was voluntary manslaughter. To establish severe burning of his chest, appellant sought to introduce photographs of the scarring of his chest at the time of trial. The trial court disallowed the photographs, holding that the condition of appellant's chest after the burns had been treated was not relevant. More specifically, the trial court wrote in its post-trial opinion as follows:

Defendant attempted to introduce photographs of himself taken at the time of trial which showed the effects of treatment, scarring, and surgery done to alleviate injuries sustained one and one-half years earlier at the time defendant was arrested. Since defendant was alleging that the injuries were inflicted by the victim and were adequate provocation for the attack which caused her death, this Court cannot see the relevancy in demonstrating those effects which were, in fact, created by treatment. The photos were not of the wounds allegedly inflicted by the victim and thus were not competent evidence.

Defendant had available to him photos of the injuries taken the night they occurred; he chose not to introduce them. These photos, taken hours after the murder, would have had probative value to the jury which was the final arbiter of whether the wounds or the circumstances of their inflictions were adequate provocation for murder.

Since defendant has not met the threshold inquiry of relevancy, his contention that the Court failed to rule on the inflammatory nature of the photos has no basis. Concerning the matter of relevancy, it has been said that: "The law furnishes no test of relevancy, but tacitly refers it to logic and general experience. Evidence is admissible which tends to make the fact at issue more or less probable or intelligible or to show the origin and history of the transaction between the parties and explain its character." *Gregg v. Fisher*, 377 Pa. 445, 454, 105 A.2d 105, 110 (1954). Therefore, issues of relevancy are left in large measure to the sound discretion of the trial court, whose decisions will not be reversed in the absence of a clear abuse of discretion. See: *Commonwealth v. Saksek*, 361 Pa.Super. 173, 522 A.2d 70 (1987); *Commonwealth v. Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985); *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984); *Commonwealth v. Lumpkins*, 324 Pa.Super. 8, 471 A.2d 96 (1984).

*Commonwealth v. Sullivan*, 372 Pa.Super. 88, 96, 538 A.2d 1363, 1368 (1988).

Whether photographs of appellant's scarred chest after treatment for second degree burns were relevant to show injury constituting sufficient provocation to reduce murder to voluntary manslaughter is a close question. "Analyzing and weighing the pertinent costs and benefits is no trivial task. Wise judges may come to differing conclusions in similar situations. Even the same item of evidence may fare differently from one case to the next, depending on its relationship to the other evidence in the cases and the importance of the issues on which it bears." McCormick on

Evidence § 185 at 546 (3d ed. 1984). It is precisely for this reason that "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Id.* at 546–547.

In the instant case, the trial court excluded the tendered photographs because they did not depict the condition of appellant's chest at the time of the killing. Although the issue of relevancy is a close one, we cannot say that the ruling of the trial court was an abuse of discretion. As the trial court observed, photographs were available for appellant's use which depicted the condition of his burned chest shortly after he had been arrested on the day of the killing and were not used.

The evidence showed that the killing had occurred following an argument between the victim and the defendant. The evidence was undisputed that the defendant had sustained second degree burns on his chest. Appellant had said in his statement to police that Victoria Alford had thrown hot water on him. Other evidence showed that there had been sulphuric acid on the defendant's shoes and trousers; and the defense argued, therefore, that Alford had poured acid on the defendant. As a result of this provocation, the defense asked the jury to find that appellant had been burned and had killed Alford while in the heat of passion or rage caused by the burning injury which he had sustained.

The law of voluntary manslaughter has been summarized at 17 P.L.E. Homicide § 32 in relevant part as follows:

Under the Crimes Code, a person who kills another without lawful justification commits voluntary manslaughter if, at any time of the killing, he is acting under a sudden and intense passion resulting from serious provocation by the victim.... As defined by the courts, voluntary manslaughter is the intentional and unlawful killing of a human being without malice, either express or implied, committed under the influence of sudden passion, or heat of passion, which places the defendant beyond the

control of reason and which is due to legally adequate provocation....

The presence of passion in its broad sense is the element that distinguishes voluntary manslaughter from murder. The term "passion" includes anger and terror, provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected, and includes rage, fear or any other emotion that renders the mind incapable of cool reflection. However, to support a finding of guilty of voluntary manslaughter by reason of heat of passion, the jury must find both that the defendant was impassioned and that a reasonable person would have acted in the heat of passion under the same circumstances. (footnotes omitted).

The passion which will reduce an unlawful killing to voluntary manslaughter must be caused by legally adequate provocation. *Commonwealth v. Flax,* 331 Pa. 145, 155, 200 A. 632, 637 (1938). The test for determining the existence of legally adequate provocation is an objective test. *Commonwealth v. Miller,* 473 Pa. 398, 399, 374 A.2d 1273, 1274 (1977); *Commonwealth v. Stasko,* 471 Pa. 373, 384, 370 A.2d 350, 356 (1977); *Commonwealth v. McCusker,* 448 Pa. 382, 389, 292 A.2d 286, 289 (1972). The test is whether a reasonable man, confronted with the same or a similar event, would become impassioned to the extent that his mind was incapable of cool reflection. *Commonwealth v. Stasko, supra* 471 Pa. at 384, 370 A.2d at 356; *Commonwealth v. McCusker, supra* 448 Pa. at 390, 292 A.2d at 290.

The trial court in the instant case instructed the jurors generally on voluntary manslaughter and the objective standard to be applied in determining whether there had been adequate provocation. The Court said:

Voluntary manslaughter exists where there was an intentional act which caused death, but such act was administered with a sufficient provocation by the individual killed and while the defendant was in a state of terror, anger, fear, rage or resentment without time to cool, so that he was placed beyond the control of his reason and suddenly

impelled to do the deed. If any of these factors be lacking, if there is provocation by the individual killed but no passion, or if there is passion without sufficient cause or provocation by the individual killed, or if there has been time to cool and reason has resumed, then the killing will be murder. What is sufficient provocation by the individual killed cannot be defined exactly for it must bear with the circumstances. However, no mere words, gestures or charges, however false or insulting, and no mere slight assault can constitute what the law knows as sufficient provocation. What is serious provocation involves an objective standard of evaluation which you must apply by asking yourselves if the provocation involved under the facts and circumstances of this case would create an intense passion in a reasonable man. The passion involved must be sufficiently intense to obscure temporarily the reason of the person effected, and it must be due to a legally adequate provocation on the part of the deceased. In short, the causal provocation by the individual killed must be such as would induce a reasonable man to lose control over his reasoning faculties and to enter into an uncontrollable frenzy which leads him to the use of deadly force without time to cool and reason to resume.

Defense counsel did not object to the foregoing instruction, but at the conclusion of the court's charge to the jury he requested the court to "inform the jury that hot water—pouring of hot water or acid on the body of the defendant could be deemed and believed to be sufficient provocation for the definition of provocation in voluntary manslaughter." Although the prosecuting attorney consented to an instruction "that acid may be considered ... on the issue of legal and just provocation," the trial court declined to give any additional instruction. Appellant contends that this was error.

■ We agree with counsel that the request to the court to relate its instructions on "adequate provocation" to the evidence in the case was a reasonable request and one

which the court might properly have granted. On the other hand, the trial court's charge to the jury contained a correct statement of the law and was free of error. Thus, when the court's instructions are examined in their entirety and considered against a backdrop of the evidence and the arguments of counsel, it cannot be said that the failure to give the requested additional instruction was prejudicial error requiring a new trial. The jury was aware of the defense contention that defendant's violent conduct had been committed in the heat of passion caused by the pouring of hot water or acid on his chest, and the trial court's instructions correctly stated the law necessary to determine whether the crime thereafter committed was murder or voluntary manslaughter. Under these circumstances the court's refusal of appellant's request for additional instructions does not require a new trial.[1]

■ The analysis which we apply in reviewing claims of ineffective assistance of counsel is firmly established.

Because the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant. *Commonwealth v. Floyd*, 506 Pa. 85, 90, 484 A.2d 365, 367 (1984); *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 71, 514 A.2d 144, 148 (1986), *allo. denied*, 514 Pa. 629, 522 A.2d 558 (1987). To meet that burden, appellant must demonstrate that 1) the issue underlying his claim of ineffectiveness is of arguable merit; 2) the course chosen by counsel had no reasonable basis designed to serve his interests; and 3) he suffered prejudice as a result of counsel's ineffectiveness. *Commonwealth v. Pierce*, 515 Pa. 153, 158–160, 527 A.2d 973, 975–76 (1987); *Commonwealth v. Buehl*, 510 Pa. 363, 378–79, 508 A.2d 1167, 1174–75 (1986); *Commonwealth ex rel.*

1. In view of our determination that the trial court's instruction concerning adequate provocation was a correct statement of the law, we reject appellant's argument that trial counsel was ineffective for failing to submit a written point for charge on the same subject. See: *Commonwealth v. McNeil*, 497 Pa. 187, 198, 439 A.2d 664, 669 (1981) (plurality opinion); *Commonwealth v. Jones*, 298 Pa.Super. 199, 209, 444 A.2d 729, 734 (1982).

*Washington v. Maroney,* 427 Pa. 599, 604–5 & n. 8, 235 A.2d 349, 352–53 & n. 8 (1967).

*Commonwealth v. House,* 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988).

■ During trial counsel's voir dire examination of juror number three, the following questions were asked and responses given:

Q. If my client does not testify or offer any evidence at all in his behalf, would you be able to follow Judge Sabo's instructions and not hold that fact against him at all in your determination as to his guilt or innocence?

A. Yes, sir.

Q. As my client sits here today, and you not having heard any evidence at all, can you at this particular point presume him to be innocent of all the charges?

A. No, sir.

Q. Well, you remember—in our society a person, as Judge Sabo indicated, who is charged with a crime is presumed to be innocent until proven guilty beyond a reasonable doubt.

A. That's correct.

Q. Would you be able to follow that instruction, and at this point presume my client to be innocent of all the charges?

A. No, sir.

Q. Why, sir?

A. Because I have to hear the story from the client, from representatives from the witnesses before I honestly could make a decision.

THE COURT: What he's saying to you is, can you presume the defendant innocent at this time until and unless the Commonwealth is able to prove him guilty beyond a reasonable doubt?

THE JUROR: Oh, yeah. Everybody is innocent until proven guilty. Excuse me. May I—what I understood the attorney is, if I think without any presentation, if a

client is guilty or innocent, and I have no judgment until I hear the presentations.

. . . .

Q. Is there anything that was not brought out by the questioning of Judge Sabo, Mr. Grant or myself, that would prevent you from being able to be fair to both sides in this case?

A. No, sir.

Q. Could you be fair to both sides in this case?

A. I'd be fair to both sides.

MR. JAMES: Thank you very much, sir.

Appellant contends that his trial counsel was ineffective for accepting juror number three. We disagree.

There is nothing in the responses of the juror to indicate that he could not serve impartially or that he would draw an adverse inference to appellant if appellant failed to testify. Indeed, the juror responded clearly that he would be able to follow the judge's instructions and would require the Commonwealth to prove appellant's guilt beyond a reasonable doubt. The juror also stated unequivocally that "[e]verybody is innocent until proven guilty." While at one point the juror exhibited difficulty in understanding defense counsel's question, his response was nothing more than a declaration that he would have to wait until all the evidence was presented before making his decision. There was nothing improper in this response, and no basis therein for sustaining a challenge for cause. As the Supreme Court recently said:

> Even a statement by a prospective (or chosen) juror that some evidence might be required from defendant to change an opinion or impression already formed would not be a sufficient basis for challenge for cause if he or she also stated that he or she could follow the court's instructions and decide the case solely on the evidence presented. *Commonwealth v. Sparrow,* 471 Pa. 490, 500–01, 370 A.2d 712 (1977); *Commonwealth v. Lopin-*

*son,* 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. McGrew,* 375 Pa. 518, 100 A.2d 467 (1953).

*Commonwealth v. Smith,* 518 Pa. 15, 37, 540 A.2d 246, 256 (1988). For similar reasons we find no basis for declaring counsel ineffective for failing to challenge the juror peremptorily.

■ Finally, appellant argues that:

[T]he District Attorney has indicated to present counsel that he offered appellant's prior counsel the opportunity for an open plea of guilty to Homicide in the 3rd Degree. The appellant himself and those members of his family who accompanied him to court every day, his mother and his cousin, Dolores Reed, all indicate that no such offer was ever conveyed to the appellant by defense counsel.

The prevailing view among courts which have considered this issue is that counsel has a duty to inform his client of tendered plea agreements and may be found ineffective for failing to do so. See: *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435 (3d Cir.1982); *Johnson v. Duckworth,* 793 F.2d 898 (7th Cir.1986), *cert. denied,* 479 U.S. 937, 107 S.Ct. 416, 93 L.Ed.2d 367 (1986); *People v. Whitfield,* 40 Ill.2d 308, 239 N.E.2d 850 (1968); *Lyles v. State,* 178 Ind.App. 398, 382 N.E.2d 991 (1978); *State v. Simmons,* 65 N.C.App. 294, 309 S.E.2d 493 (1983); *People v. Alexander,* 136 Misc.2d 573, 518 N.Y.S.2d 872 (1987); *Hanzelka v. State,* 682 S.W.2d 385 (Tex.App.1984); *State v. James,* 48 Wash.App. 353, 739 P.2d 1161 (1987); *State v. Ludwig,* 124 Wis.2d 600, 369 N.W.2d 722 (1985). See generally: Annot. *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Plea Bargaining,* 8 A.L.R.4th 660 (1981). Cf. *United States v. Bowers,* 517 F.Supp. 666 (W.D.Pa.1981) (counsel found ineffective for failing to advise defendant of government's offer of immunity).

This precise issue has not been before the appellate courts of Pennsylvania. However, in *Commonwealth v. Napper,* 254 Pa.Super. 54, 385 A.2d 521, 10 A.L.R.4th 1 (1978), the Superior Court determined that defense counsel had been ineffective for failing to advise his client regard-

ing the merits of accepting a tendered plea bargain vis-a-vis the dangers of trial. In *Napper*, counsel had informed the defendant that a plea offer had been made, but counsel had failed to give his client professional advice regarding the advantages of accepting the offer and the dangers inherent in rejecting it. Finding this to constitute ineffective assistance of counsel, the *Napper* Court reasoned:

> Defense counsel has a duty to communicate to his client, not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial. See, e.g., A.B.A. Project on Standards for Criminal Justice: Standards Relating to The Prosecution Function and The Defense Function, (Approved Draft, 1971):

> Advising the defendant.

> (a) After informing himself fully on the facts and the law, the lawyer should advise the accused with complete candor concerning all aspects of the case, including his candid estimate of the probable outcome.

> (b) It is unprofessional conduct for a lawyer intentionally to understate or overstate the risks, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea.

> *Id.*, The Defense Function § 5.1 (emphasis added).

*See also* I Amsterdam, Segal and Miller, Trial Manual for the Defense of Criminal Cases (1967):

> The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But counsel may and must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest. Such persuasion is most often needed to convince the client

to plead guilty in a case where a not guilty plea would be totally destructive.

*Id.* at 2–143 (emphasis added).

Here, counsel chose to neglect his duty "to give [appellant] the benefit of his professional advice on [the] crucial decision" whether to accept the plea bargain offer; his "offhanded" presentation, made for reasons entirely inappropriate to his client's interests, failed to make clear to appellant "the risks, hazards or prospects of the case." Under the circumstances, we must hold trial counsel ineffective, for we cannot conclude that he "made an informed choice, which at the time the decision was made reasonably could have been considered as advancing and protecting the appellant's interest." *Commonwealth v. Roundtree,* 469 Pa. 241, 249, 364 A.2d 1359, 1363 (1976).

We recognize that appellant might have rejected the plea bargain offer because it would have meant "state time." We also recognize that we cannot be sure that the trial court, which after trial imposed very heavy sentences, would have accepted the plea bargain. These uncertainties, however, in no way affect the fact that counsel, for no good reason, failed to take action that arguably might have furthered appellant's interests. In other words: It cannot be denied that upon proper advice, appellant might have accepted the offered plea bargain; nor that, while a court may reject a plea bargain, as a practical matter—especially in crowded urban courts—this rarely occurs. Finally, it should be noted that our decision gives appellant only imperfect relief. We cannot compel the Commonwealth to reinstate its plea bargain offer; nor can we dictate what sentence may be imposed if appellant pleads guilty without so advantageous an offer as he had before, or if he goes to trial and is again convicted.

*Commonwealth v. Napper, supra* 254 Pa.Super. at 60–61, 385 A.2d at 524, 10 A.L.R.4th at 5–7. Cf. *Commonwealth v. McNeil,* 497 Pa. 187, 195–196, 439 A.2d 664, 668 (1981)

(plurality opinion) (counsel not ineffective for failing to advise defendant of plea bargain where counsel testified at evidentiary hearing and court found that prosecution was unwilling to offer any plea and that counsel advised his client of such fact).

Based upon the reasoning of *Napper* and the consensus among courts of other jurisdictions which have considered the issue here raised, we conclude that there is arguable merit in appellant's contention that counsel was ineffective for failing to tell him of the plea agreement which the Commonwealth had offered.

> When an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the court below to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing. See: *Commonwealth v. Spotts*, 341 Pa.Super. 31, 33, 491 A.2d 132, 134 (1985).

*Commonwealth v. Petras*, 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). Therefore, we will vacate the judgment of sentence, at least for the time being, and remand the case to the trial court for an evidentiary hearing on appellant's claim that trial counsel was ineffective for failing to disclose to him that a plea agreement had been offered by the Commonwealth. At such hearing, in order to be entitled to relief, appellant will have the burden of proving that: (1) an offer for a plea was made; (2) trial counsel failed to inform him of such offer; (3) trial counsel had no reasonable basis for failing to inform him of the plea offer; and (4) he was prejudiced thereby. If appellant establishes these facts, he must be awarded a new trial. If, however, he fails to meet the burden of proving these facts, the judgment of sentence may be reinstated.

The judgment of sentence is vacated and the case is remanded for an evidentiary hearing in accordance with the foregoing opinion. Jurisdiction is not retained.