**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ERIC JAMES ORNER | : | |
| Appellant | : | No. 1086 MDA 2025 |

Appeal from the PCRA Order Entered July 15, 2025
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000404-2021

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY NEUMAN, J.:                    **FILED: JUNE 5, 2026**

Appellant, Eric James Orner, appeals from the post-conviction court's July 15, 2025 order dismissing his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court set forth a detailed summary of the pertinent facts and procedural history of Appellant's case, which we adopt herein.  *See* PCRA Court Opinion and Order (PCOO), 7/15/25, at 1-3.  Briefly, on May 23, 2022, Appellant entered a negotiated guilty plea to involuntary deviate sexual intercourse (18 Pa.C.S. § 3123), corruption of minors (18 Pa.C.S. § 6301), and statutory sexual assault (18 Pa.C.S. § 3122.1(b)).  Pursuant to the plea agreement, the court sentenced Appellant on July 24, 2023, to an aggregate term of 8 to 16 years' incarceration.  Appellant did not file any post-sentence motions or a direct appeal.

Instead, on February 5, 2024, Appellant filed a timely, counseled PCRA petition. Therein, he argued his plea counsel, Kyle Rude, Esq., acted ineffectively in various regards, including by advising Appellant to reject a plea offer of 4 to 8 years' incarceration because counsel assumed the victim would not show up to testify at trial. *See* PCRA Petition, 2/5/24, at 4. An evidentiary hearing was conducted on August 13, 2024, at which Attorney Rude and Appellant both testified. After the hearing, the court permitted the parties to file briefs. On July 15, 2025, the PCRA court issued an order and opinion denying Appellant's petition.

Appellant filed a timely notice of appeal, and he and the court complied with Pa.R.A.P. 1925.[1] Herein, Appellant states two issues for our review:

1. Whether the PCRA court erred in failing to find that trial counsel improperly advised [Appellant] during plea negotiations with regard to whether to accept or reject the initial plea offer?

2. Whether the PCRA court erred in failing to find that trial counsel's actions and/or inactions caused prejudice to [Appellant]?

Appellant's Brief at 3 (unnecessarily capitalization omitted).

Appellant's two issues are related and will be addressed together. Initially, we note "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Morales*, 701 A.2d 516, 520 (Pa. 1997)

---

[1] The PCRA court filed an opinion stating it was relying on its opinion and order filed on July 15, 2025. *See* PCRA Court Opinion, 9/25/25, at 1 (single page).

(citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims he or she received ineffective assistance

of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S. § 9543(a)(2)(ii).  "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 ... (1984)]).   In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry.  **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)].  Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result.  **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010).  "If a petitioner fails to prove any of these prongs, his claim fails."  **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted).  Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests.  **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued."  **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted).   To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted).   "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'"  **Ali**, … 10 A.3d at 291 (quoting

> ***Commonwealth v. Collins***, … 957 A.2d 237, 244 ([Pa.] 2008)
> (citing ***Strickland***, 466 U.S. at 694…)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

> Additionally,

> a post-conviction petitioner seeking relief on the basis that
> ineffective assistance of counsel caused him or her to reject a
> guilty plea must demonstrate the following circumstance:

>> [B]ut for the ineffective advice of counsel there is a
>> reasonable probability that the plea offer would have been
>> presented to the court (*i.e.*, that the defendant would have
>> accepted the plea and the prosecution would not have
>> withdrawn it in light of intervening circumstances), that the
>> court would have accepted its terms, and that the conviction
>> or sentence, or both, under the offer's terms would have
>> been less severe than under the judgment and sentence
>> that in fact were imposed.

***Commonwealth v. Steckley***, 128 A.3d 826, 832 (Pa. Super. 2015) (quoting

***Lafler v. Cooper***, 566 U.S. 156, 164 (2012)).

Here, Appellant contends Attorney Rude ineffectively advised him the

victim in this case would likely not testify, and "if the victim did not testify,

[Appellant] should go to trial as without her testimony there was no case."

Appellant's Brief at 10.  Based on counsel's advice, Appellant rejected two plea

offers from the Commonwealth in November of 2021: the first offer was for 5

to 10 years' incarceration, and the second offer was for 4 to 8 years'

incarceration.[2]  However, in May of 2022, the victim appeared to testify at a

---

[2] There are discrepancies in the record, briefs of the parties, and the PCRA
court's opinion regarding whether the first plea offer was for 5 to 10 years, or
5 to 15 years.  ***See*** N.T., 8/13/24, at 15 (the Commonwealth's indicating the
original offer was 5 to 15 years); ***id.*** at 16 (Attorney Rude's reading emails
stating the offer was 5 to 10 years); ***id.*** at 30 (Appellant's testifying the initial
*(Footnote Continued Next Page)*

- 4 -

pretrial hearing. At that point, the Commonwealth made another plea offer, but it was for an increased sentence of 8 to 16 years' incarceration. Appellant alleges he asked Attorney Rude "whether the original offer of 5 to 10 was on the table[,]" *id.* at 12, but counsel advised him the Commonwealth said Appellant "should have accepted the [offer of] 4 to 8." *Id.* at 11. Ultimately, Appellant chose to accept the plea offer of 8 to 16 years' incarceration, rather than proceed to trial. He now avers Attorney Rude's advice not to accept the Commonwealth's offer of 4 to 8 years' incarceration was unreasonable, as it was based solely on counsel's incorrect "belief that the victim would never appear to testify at trial." *Id.* at 7. Appellant further insists he was prejudiced by counsel's ineffectiveness because, had Appellant "received proper advice, he would have accepted" the plea offer of 4 to 8 years' incarceration. *Id.*

In assessing Appellant's arguments, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion filed on July 15, 2025, by the Honorable Nancy L. Butts, President Judge of the Court of Common Pleas of Lycoming

---

offer was 5 to 10 years); Appellant's Brief at 11 (stating the original plea offer was 5 to 10 years); Commonwealth's Brief at 4 n.1 (stating the original offer was 5 to 15 years); PCOO at 7 (stating the first offer was 5 to 10 years). Similarly, it is unclear whether the second plea offer was for 4 to 8 years, or 4 to 10 years. *See* N.T. at 17 (Attorney Rude's stating the offer was 4 to 10 years); *id.* at 18 (the Commonwealth's stating the offer was 4 to 10 years); Appellant's Brief at 11 (stating the second offer was 4 to 8 years); PCOO at 5 (stating the second offer was 4 to 8 years). We need not resolve these discrepancies, as the specifics of the first two plea offers is not dispositive of the issues Appellant raises on appeal. We will consider each of the plea offers as being the lower of the two options, *i.e.*, 5 to 10 years, and 4 to 8 years.

County. We conclude that PJ Butts' comprehensive opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt PJ Butts' opinion as our own and affirm the order denying Appellant's PCRA petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/05/2026

**IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA    :
      : No.  CP-41-CR-0000404-2021
    v.         :
      :
ERIC ORNER,        : Post Conviction Relief Petition
       Petitioner    :

## OPINION AND ORDER

Eric Orner (Petitioner) filed a counseled petition for Post Conviction Relief (PCRA) on February 5, 2024. A preliminary conference on the petition was held on April 30, 2024. After the conference on the Amended Petition, the Court issued an order directing that all witness certifications be submitted by June 17, 2024, and set the matter for evidentiary hearing on August 13, 2024. Further, the Court outlined the issues to be explored during the evidentiary hearing as those contained in paragraphs e[1], f[2], g[3] and h[4] of the PCRA petition. The deadline for certifications was extended by the Court to July 1, 2024. In the interim, the Commonwealth filed an answer to the PCRA petition. The Court litigated the issues on August 13, 2024. The parties also requested the opportunity to file briefs the last of which was received by the Court on September 23, 2024.

*Background*

Petitioner was arrested on March 6, 2021 by the Pennsylvania State Police (PSP), who filed a criminal complaint alleging that, between September 1, 2019 and January 1, 2021,

---

[1] This issue alleges that counsel was ineffective in advising petitioner in not accepting a 4 to 8-year plea offer that was made by the Commonwealth prior to the case being listed for jury selection and trial.

[2] This issue alleges that counsel was ineffective in advising Petitioner that the victim was not going to show up and testify at the trial in this matter, based upon his investigation, and telling him he should reject the proposed plea offer.

[3] This issue alleges trial counsel's ineffectiveness as failing to challenge the Commonwealth's Motion in Limine which precluded Petitioner from presenting witnesses to impeach the credibility and the reputation of the victim for truthfulness. This issue was withdrawn at the hearing on the petition. N.T., PCRA Evidentiary Hearing 8/13/2024 at 42.

[4] This issue asserts that trial counsel was ineffective in persuading Petitioner that the Commonwealth could not meet[s] (sic) its burden of proof without the witness and therefore, he should reject the plea offer.

Petitioner would have engaged in sexual intercourse and deviate sexual intercourse with an individual (VH) under the age of 16. At that time, the Petitioner would have been 11 or more years older than VH. It was also alleged that, as a result of the acts between VH and Petitioner, he would have corrupted or tended to corrupt her morals along with the allegation that he would have knowingly photographed, videotaped or depicted on a computer or a film VH either engaging in either a prohibited sexual act or a simulation of a prohibited sexual act. In anticipation of the jury trial, Commonwealth filed a Motion in Limine at which time the parties entered into an agreement accepted by this Court. The agreement acknowledged that intoxication would not be an available defense to Petitioner at trial. Further, trial counsel agreed that it would be bound by the provisions of the Rape Shield Law.[5]

On May 23, 2022, just prior to the start of the two-day jury trial, Petitioner pled guilty before this Court. At the time of the guilty plea, Petitioner acknowledged he would have been 31 years old and that he had sexual relations with VH, who would have been 15 at the time. (N.T., Guilty Plea, 5/23/2022, at 7). Petitioner further acknowledged that he would have been advised that as a result of a conviction for the offense of involuntary deviate sexual intercourse he would be listed as a Tier III offender under SORNA.[6] Prior to sentencing, the Petitioner was required to be evaluated by the SOAB[7] to determine if he was a sexually violent predator. Petitioner was scheduled for sentencing on September 22, 2022.

On September 19, 2022, the Petitioner filed a motion to withdraw his guilty plea and a hearing on that motion was scheduled for October 11, 2022. This Court found that Petitioner did not advance a "plausible assertion of innocence" or a "fair and just reason" to withdraw his plea. The Court additionally found that at no time did Petitioner assert even a colorable claim of

---

[5] 18 Pa. C.S. §3104.
[6] Sexual Offender Registration and Notification Act, 42 Pa. C.S.A. § 9799.14(d).
[7] Sexual Offender Assessment Board, 42 Pa. C.S.A. § 9799.24.

2

innocence. A more detailed opinion and order was issued on December 6, 2022. A Motion to Reconsider the Court's decision was filed on January 5, 2023 and was denied on April 25, 2023.

Petitioner was sentenced on July 24, 2023 to 4-8 years on the charge Involuntary Deviate Sexual Intercourse[8], 1-2 years on Corruption of Minors[9], and 3-6 years on Statutory Sexual Assault[10] for an aggregate sentence of 8-16 years to be served in a State Correctional facility as negotiated in the plea agreement.[11] Petitioner's sentence became final on August 23, 2023. No post sentence motions or appeals were filed. Therefore, Petitioner's PCRA petition filed on February 5, 2024 was timely.

To be eligible for relief under the PCRA, Petitioner must plead and prove that his conviction or sentence resulted from ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place (*see* 42 Pa. C. S. §9543(a)(2)) and that the allegation of error has not been previously litigated or waived, *(see* 42 Pa.C.S. §9543(a)(3)). A claim is previously litigated under the PCRA if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2). An allegation is deemed waived if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state post-conviction proceeding. 42 Pa.C.S. §9544(b).

The law presumes counsel has rendered effective assistance, and to rebut that presumption, a petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Commonwealth v. Kohler*, 36 A.3d 121, 132 (Pa. 2012). "[T]he

---

[8] 18 Pa. C.S.A. § 3123.
[9] 18 Pa. C.S.A. § 6301.
[10] 18 Pa. C.S.A. § 3122.1(b).
[11] The Court also sentenced Petitioner to concurrent sentences of 1-3 years on Aggravated Indecent Assault, 18 Pa. C.S.A. §3125(a)(8), and 1-3 years on Photographing/Film Depicting on Computer, Sexual Acts, 18 Pa. C.S.A. §6312(b)(2).

3

burden of demonstrating ineffectiveness rests on [the petitioner]." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, a petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the petitioner's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

"Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2000) (citation omitted). A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued. *Id.* In addition, we note that counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Nolan*, 855 A.2d 834, 841 (2004) (superseded by statute on other grounds).

Petitioner's claim for ineffective assistance of counsel in connection with advice rendered regarding whether to plead guilty is cognizable under the PCRA pursuant to 42 Pa.C.S. § 9543(a)(2)(ii). *Commonwealth v. Barndt*, 74 A.3d 185, 191–92 (Pa. Super. 2013); *see also Commonwealth v. Lynch*, 820 A.2d 728, 731–32 (Pa. Super.2003); *Commonwealth v. Rathfon*, 899 A.2d 365, 369 (Pa. Super.2006). The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea. *Wah*, 42 A.3d 335, 338 (Pa. Super. 2012).

4

Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Wah*, 42 A.3d at 338-39. To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Rathfon*, 899 A.2d at 369–70 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). "The reasonable probability test is not a stringent one"; it merely refers to "a probability sufficient to undermine confidence in the outcome." *Id.* at 370 (quoting *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super.2002)). *Barndt*, 74 A.3d at 192.

### Did trial counsel improperly advise the Petitioner during plea negotiations?

PCRA counsel alleges that trial counsel improperly advised Petitioner not to take the 4- to 8-year plea offer that was offered to him by the Commonwealth prior to the case being scheduled for jury selection and trial. In support of that recommendation, Petitioner alleges that trial counsel would have told him that VH would not appear to testify at trial.

To establish that counsel was ineffective for advising him to reject the plea, a defendant has the burden of proving that counsel had no reasonable basis for his advice. *See Commonwealth v. Copeland*, 381 Pa.Super. 382, 554 A.2d 54 (setting forth defendant's burden of proof to establish counsel's ineffectiveness for failing to communicate a plea).

> The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But counsel may and must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest. Such persuasion is most often needed to convince

5

the client to plead guilty in a case where a not guilty plea would be totally destructive.

*Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005), quoting *Copeland* at 554 A.2d at 60.

Here, the testimony is replete with evidence of the uncertainty and reluctance of VH to testify as well as Petitioner's direct involvement in the decision-making process. The Court finds that all throughout the pretrial process, trial counsel was available and provided Petitioner with an ongoing assessment of the status of his case particularly with respect to the willingness or participation of the victim, VH.

Rude testified initially that at the preliminary hearing VH was very reluctant, emotional and crying. N.T., 08/13/2024 at 3. Rude described that she was "reluctant, very distraught and shaking." *Id*. He said that it appeared that she didn't want to be there. *Id*. After Rude talked about the status conference at which time there was no offer made by the Commonwealth to his client, he shared with Petitioner that the Commonwealth knows they "have a reluctant victim. They know she may not testify. I said that's what they said about the victim." *Id*. at 6. This email conversation occurred May 25, 2021. *Id*. at 5; Petitioner's Exhibit # 1

Rude testified that at some point the Commonwealth notified him that if an offer was to be made, the case needed to be taken off the trial list. That email conversation would have been September 27, 2021. *Id*. at 7. Petitioner's Exhibit #2. Rude described the approach of the Commonwealth as "playing hardball" *Id*. During this time Rude indicated to the Commonwealth that his client would not accept anything 'that said state prison' and that the Commonwealth was not offering anything to be served in the county. *Id*. Rude also believed it was after this conversation that he shared with Petitioner that he thought that the Commonwealth was going to

6

make an offer "because he doesn't have a willing victim." *Id.* Rude supposed that VH didn't want to testify, but indicated that "the Commonwealth told him that she does want to testify, but he did not believe it." *Id.* Shortly after that conversation in October 2021, VH would have withdrawn a PFA that was filed against Petitioner. *Id.* at 8. In November, Rude took the case off the trial list to obtain an offer. *Id.* He told Petitioner on November 23 that the offer was 5 to 10 years in state prison. *Id.* Rude also noted that he told Petitioner that he was looking at a mandatory 10 to 20-year sentence if he was convicted on the IDSI charge, and that if VH testified he would lose. *Id.*; Petitioner's Exhibit #4. During this time Rude was attempting to communicate with VH to assess her willingness to testify, but her mother appeared to be interfering. *Id* at 9.

In November, Rude continued to have an email conversation with Petitioner to explain that his odds were good if she did not testify. Petitioner's Exhibit #5. He shared his concerns about serving 5 to 10 years in state prison and wanted to understand what his exposure would be if VH didn't testify. *Id* at 9. During this time, Rude went back to the Commonwealth to ask for a lower offer and the Commonwealth countered with a 4 to 10-year state prison sentence. *Id.* at 10. Rude described this time as negotiating back-and-forth. *Id.* Rude testified that as of November 2021, they were getting word that VH did not want to testify; members of her family were letting Petitioner know. *Id.* On May 19, 2022, the day when the Motion in Limine was scheduled to be heard, Rude discovered that VH was present and prepared to testify. *Id.*

It was during this time that Rude advised Petitioner that if VH was not going to testify, "it's a much better defense case" and would have told Petitioner not only did he need to make the decision, but that if she was not going to testify, he should go to trial. *Id.* at 11. Rude stated that he knew without VH's testimony the Commonwealth had no case. *Id.* at 12.

7

A jury was selected and the Motion in Limine was scheduled to be litigated prior to the start of the trial. *Id.* at 12. Rude would have notified Petitioner that VH was going to testify and that he would need to decide whether or not to go to trial or to accept the plea offer which was now 8 to 16 years. When they were under the impression that VH was not going to testify, Rude didn't encourage him to take the previous lower offer. *Id.* But once the jury was selected, and the Commonwealth increased the offer to 8 to 16 years, his client had a more difficult decision to make. *Id.* at 13.

Rude estimated that for more than a year before trial he was under the impression that VH was not going to testify or appear. *Id.* at 13. He testified that he tried to reach out to VH on Facebook and was approached by the D.A.'s Office victim witness coordinator that VH did not want contact with them. *Id.* Rude said they were attempting to reach out to her to find out if she was going to testify or not because she had left a box of notes for Petitioner. *Id.* He described that the information in the notes did not "speak of someone who wanted to see him go to state prison." *Id.* He wasn't sure when those notes were dated, but Rude believed that they may have been written somewhere before and somewhere after the charges were filed. *Id.* Rude testified that he would not have advised someone to plead guilty knowing there was a potential there would be no case at all. *Id.* at 14.

On cross, Rude acknowledged that his client did not want to go to state prison. *Id.* at 14. Both counsel for the Commonwealth and Petitioner referenced the emails sent between Petitioner and trial counsel between November 23, 2021 and November 26, 2021. *Id.* at 16. In those emails Rude discusses the offer from the Commonwealth as being 5 to 10 years to be served in state prison. *Id.* The email also outlined for Petitioner that a "conviction is almost guaranteed with your video recorded admissions and written statement." *Id.* They had additional discussions

8

about the other evidence the Commonwealth had other than VH's testimony. *Id.* at 22. The Commonwealth had videos or potential videos that could be presented or text messages confirming that videos existed before they were deleted. *Id.* There were also recorded admissions made by Petitioner during his state police interview. *Id.* In addition, there was also a box of notes provided to Rude from the defense side. *Id.* Rude testified that he told his client if he was convicted of one IDSI charge "you faced a mandatory of 10 to 20 year sentence. If she testifies, you will lose." *Id.* at 16. It was at this point that Rude asked Petitioner in the email "at what state sentence lower than 5 to 10 could you handle" to which Petitioner responded "maybe two or three years." *Id.* In Petitioner's email response, he also acknowledged that "if she testifies I will certainly lose." *Id.* They also discussed Rude's efforts to reach out to VH, which were unsuccessful because of her mother's interference. *Id.* at 17. In the November 26, 2021 email, Petitioner discusses his knowledge of the risk of going to trial and the time that he could be facing but

> "with everything that I present to you like the text message of her apologizing to me and the new message I sent, I feel that she doesn't want to testify against me and we both want to move on past this". Petitioner adds "I do not want to accept the plea when there is still that chance that she will not show up to testify. At the beginning it showed me that she didn't want to be there in the courtroom and I felt that she was being coached into it. I'm not the only one who feels this way."

*Id.*

Rude further testified that the information he was receiving about the reluctance of VH to testify was coming directly from Petitioner. *Id.* at 18. He also characterized the decision to reject that 4 to 10-year plea offer was the client's decision counseled by him. *Id.* Rude testified that while he didn't give him a specific instruction, he did not rush him into deciding, and he knew

9

that Petitioner was communicating with other family members and his brother to help him decide what he should do. *Id.*

As part of an email chain[12] before Petitioner entered his plea on May 23, 2022, Petitioner wrote in an email that he wanted to be able to remain on bail until sentencing no matter the outcome because he indicated that he was not in trouble in the past 10 years and didn't have any problems while he was out on bail and it would help his company out to give them time to find a replacement for him. *Id.* at 19. In the email from Petitioner, he described that his brother Josh 'really wants to keep fighting this somehow' and asked if the police found anything on his phones. *Id.* Rude did verify with Petitioner that the police had text messages of him, confirming he videotaped sexual activities that Petitioner was unable to erase before the phone was broken or submerged in water, and that there was a discussion about if he just entered a guilty plea 'they [Commonwealth] will not request your bail be revoked.' *Id.* at 20.

Rude also testified that he believed that VH was physically present at the courthouse at the time the Motion in Limine was heard. *Id.* at 24. Rude testified that she would have been 31 weeks pregnant at that time. *Id.* He added that it was as a consequence of her being there that it changed his opinion as to how to advise Petitioner on how to proceed. *Id.*

Rude testified that he was unable to get the Commonwealth to lower their 8 to 16 year offer for the Petitioner to plead guilty. *Id.* at 25. He also testified that at that point other than a lower sentence, the only thing to do would be to call the Commonwealth's bluff and proceed to trial. *Id.* He was absolutely certain that his client knew that it was his decision to plead guilty and that Petitioner knew that Rude could not make that decision for him. *Id.*

Petitioner was also called to testify at the hearing. He testified that he is currently serving the 8 to 16-year sentence. *Id.* at 26. He testified that he was at the prison and not in person at the

---

[12] Petitioner's Exhibit #2 was also marked as Commonwealth's #2.

preliminary hearing, but he was able to see everything that transpired at the MDJ office. *Id.* at 27. Petitioner described seeing VH as the Commonwealth "pretty much had to drag her up to the stage to give her testimony." *Id.* Petitioner also testified that he and his trial counsel talked about VH being a reluctant witness. *Id.*

PCRA counsel asked Petitioner about the emails that would have been sent back-and-forth between him and his trial attorney. *Id.* at 27. He testified that the first email he received was May 25, 2021. *Id.* at 28. In that email trial counsel indicated that he thought the Commonwealth had a reluctant witness. *Id.* Petitioner remembered that at that point in time there were no discussions of a potential plea. *Id.* at 29. He believed that the first time they talked about a potential plea was around Thanksgiving. *Id.* He described that he was told his case needed to be removed from the trial list in October or there would be no plea offer given. *Id.* He then described that in the time between the preliminary hearing and the case being removed from the trial list that VH had been attempting to reach out to him *Id.* Petitioner testified that she would have sent him a Facebook text message which he provided to his attorney. *Id.* The substance of the message was "apologizing to me and I believe she has been trying to speak to friends and family and her stepmother had reached out" around that time the victim's mother had gotten a PFA against Petitioner, but that it was withdrawn. *Id.* at 30.

Petitioner, then testified that once the case was removed from the trial list, he received an offer of 5 to 10 years which he explained "did not really sit well with him." *Id.* at 30. He added that "everything that I had seen the way they were reaching out, him [Rude] believing the Commonwealth had no type of evidence but he would counter with see what the counter offer is" *Id.* Petitioner said at this point he was not interested in pleading guilty and they were just exploring what the Commonwealth was willing to give by way of an offer. *Id.* at 31. Petitioner

11

did acknowledge that he would be willing to accept some sort of plea, but he would not have pled if she wasn't going to appear. *Id.* at 31. Petitioner then testified that at some point trial counsel continued to tell him that he believed she was a reluctant witness, but that opinion changed at the time of the hearing on the Motion in Limine. *Id.* Prior to that Motion hearing, Petitioner testified that each time he and trial counsel communicated, Rude never expressed to Petitioner that anything was wrong about his case. *Id.* at 32.

Petitioner testified that he met with his attorney, maybe twice in the office and counsel had never explained what the consequences could be if he was found guilty after trial or that he had the right to have character witnesses. *Id.* at 32. He did clarify that answer to say that Rude might have explained it to him, but that they really didn't discuss a lot of those matters. *Id.* He further testified that he was primarily basing his decision to not accept the plea on what trial counsel was telling him about the victim. *Id.*

Petitioner testified regarding a message he received between a friend's son and VH. *Id.* at 32. Petitioner offered an additional exhibit. The parties stipulated that the email was from VH to another individual. *Id.* In the email, Petitioner's Exhibit #8, VH describes that she is fine, 31 weeks pregnant and was asking how Petitioner was. *Id.* In the email VH says "I tried reaching out to him apologizing for everything, but I don't think he seen it." *Id.* at 36. Petitioner testified that he would've received this copy of the email prior to the Motion in Limine hearing. *Id.* at 37. From this email, Petitioner believed that it reinforced in his mind that the victim was not going to testify against him. *Id.* He then proceeded to testify that he went into a conference room prior to the Motion in Limine hearing with trial counsel and Rude shared with him that the victim was upstairs with the DA willing to testify. *Id.* at 43. Petitioner then testified that Rude would have told him it's "probably in your best interest to either take a plea or run to Hawaii." *Id.* at 43. He

12

did not remember if there was a plea agreement at that time. *Id.* Petitioner was aware of a plea agreement which came over the weekend prior to the start of the trial on 23 May. *Id.* The offer now from the Commonwealth was 8 to 16 years. *Id.* at 44. Petitioner testified that he asked Rude about the original plea of 5 to 10 and that it was not only no longer on the table, but that he should have taken the 4 to 8-year offer. *Id.* at 44.

Petitioner remembered that when the 4 to 8-year plea offer was available to him his attorney did not discourage him from taking it but that "it just seemed like he assumed that she's not testifying our chances at trial looking good." *Id.* at 44. Petitioner reaffirmed that the first time he believed that the victim was going to be present to testify was after the motion in limine *Id.*

Petitioner testified that he felt he had no other option but to take a guilty plea the day that the trial was scheduled to start. *Id.* at 45. It was at this point that the Commonwealth requested that a copy of the guilty plea hearing be made part of the record for this PCRA proceeding as well. *Id.* at 47.

The Court finds that there is insufficient evidence to support a finding that trial counsel offered legally improper advice. Rather, trial counsel's advice was responsive to evolving facts and appears to have had a reasonable basis grounded in trial strategy and client communication. Rude advised Petitioner during pretrial negotiations that VH was likely not going to testify based on her demeanor at the preliminary hearing and subsequent indications from her family and even VH herself. This belief was shared with the Petitioner and corroborated by communications, including Rude's assessment from the preliminary hearing (VH appeared distraught and reluctant) which Petitioner observed over video, messages VH sent apologizing and attempting to contact Petitioner, and the withdrawal of the PFA filed by VH's mother.

13

Rude actively negotiated with the Commonwealth and relayed that a plea offer (e.g., 4–8 years or 5–10 years) was possible only if the case was removed from the trial list and he described the Commonwealth's posture as "playing hardball." Further, trial counsel did not affirmatively advise Petitioner to reject the lower offers. Rather, he explained the risks, including mandatory sentencing exposure (10–20 years on IDSI) and the importance of VH's testimony.

Petitioner himself stated in emails that if VH testified, he would lose; if she didn't, he had a chance. This reflects an understanding of the stakes involved in his choice. Ultimately, trial counsel's advice that Petitioner could have a stronger position if VH did not testify had a reasonable basis at the time it was given, and was based on observable facts and client-provided information.

### *Has Petitioner proven that trial counsel's actions caused prejudice?*

Petitioner alleges that his trial counsel was ineffective in his advice to him and but for that deficient advice he would have accepted the guilty plea with the reduced sentence offered by the Commonwealth. The Commonwealth alleges that Petitioner's claim fails as he has not met his burden of proof to show prejudice.

To obtain relief on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and the prejudicial-impact test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Supreme Court of Pennsylvania applies *Strickland* by requiring a petitioner to establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *see also Commonwealth v.*

14

*Solano*, 634 Pa. 218, 129 A.3d 1156, 1162 (2015). If a claim fails under any required element of the *Strickland/Pierce* test, the court may dismiss the claim on that basis. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the appellant. *Id. See also Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa. Super. 2020).

The testimony of both trial counsel and Petitioner was that there was no talk of the Petitioner pleading guilty until they knew that VH was present in the courthouse and prepared to testify. It is clear from the Petitioner's statements at both his guilty plea and PCRA hearing that Petitioner was not interested in entering a plea in his case until he discovered that VH was ready and willing to testify which occurred shortly before trial. Although he would have taken his case off of the trial list to a plea list it was not to plead but for the sole purpose of obtaining a plea offer from the Commonwealth. Because the offer was for state time, Petitioner was not interested in entering a plea, or as he said, "it really wasn't sitting well with him."

Although Petitioner now expresses regret over not accepting the earlier, more favorable plea deal, he has not proven that trial counsel's conduct caused prejudice sufficient to meet the standard under *Strickland v. Washington* and its Pennsylvania progeny. To prove prejudice, Petitioner must show that "but for counsel's errors, he would have accepted the plea and not gone to trial" (*Hill v. Lockhart*, 474 U.S. 52, 59). Under the somewhat unique circumstances of this case, however, to prove prejudice Petitioner must show that he would have accepted the earlier plea offer of 4 to 8-years prior to the Commonwealth revoking that offer without knowing with certainty that VH would appear and testify against him. The record reflects that Petitioner was reluctant to accept **any** plea involving state incarceration. **He explicitly stated he would not plead guilty if there was still a chance VH wouldn't testify.** Petitioner was actively involved

15

in assessing whether VH would appear, relying in part on messages and communications from her and her family, even communicating with members of his own family and waited until after a jury was selected and until VH's physical presence at the courthouse was confirmed before entering a plea.

Furthermore, trial counsel testified that he did not advise Petitioner against accepting the 4 to 8-year plea, but rather that the final decision was Petitioner's. Petitioner was aware that he likely would be convicted if VH appeared and testified against him and that he was facing a sentence of at least 10 to 20 years if he were convicted of only one count of IDSI. Trial counsel advised Petitioner of those risks. Petitioner chose not to accept the initial plea offer and gamble that VH would not appear to testify against him. It was not until she was present at the courthouse and intended to testify against him that Petitioner was willing to enter a guilty plea. By that time, however, the Commonwealth revoked its offer of 4 to 8 years and increased the offer to 8–16 years. Petitioner took a calculated risk that VH would not appear and lost.

## Conclusion

The advice trial counsel gave Petitioner was not improper under Pennsylvania law. It fell within the range of competent legal judgment, and the decision was left to the client. No evidence presented at the hearing indicates trial counsel acted with misinformation, coercion, or incompetence. Petitioner's rejection of the earlier plea was not based on defective legal advice but on his own assessment of trial risk in consultation with counsel as well as members of his own family. As such, he has not demonstrated a reasonable probability that, but for ineffective assistance, he would have accepted the lower plea offer. Petitioner has neither met his burden under *Strickland* and *Pierce* to show that trial counsel rendered ineffective assistance by giving improper advice, nor that such advice prejudiced him in a way that undermines confidence in the

16

outcome. Based on the foregoing, this Court finds no basis upon which to grant Petitioner's PCRA petition.

## **ORDER**

AND NOW, this 15th day of July, 2025, for the reasons set forth above the court DENIES Petitioner's PCRA petition.

Petitioner is hereby notified that he has the right to appeal from this order to the Pennsylvania Superior Court. The appeal is initiated by the filing of a Notice of Appeal with the Clerk of Courts at the Lycoming County courthouse, and sending a copy to the trial judge, the court reporter, and the prosecutor. The form and contents of the Notice of Appeal shall conform to the requirements set forth in Rule 904 of the Rules of Appellate Procedure.

The Notice of Appeal shall be filed within thirty (30) days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903. If the Notice of Appeal is not filed in the Clerk of Courts' office within the thirty (30) day time period, Petitioner may lose forever his right to raise these issues.

The Clerk of Courts shall mail a copy of this order to the Petitioner by certified mail, return receipt requested.

By the Court,

Nancy L. Butts, President Judge

XC:  DA (Martin Wade, Esq.)
Robert A. Hoffa, Esq.
Eric Orner QP8459 (certified mail, return receipt requested)
SCI Smithfield
1120 Pike Street
Huntingdon, PA 16652
Gary Weber, Esquire
Jerri Rook

17